## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLA MARSHALL,** | : | **Case No. 1:26-cv-00267** |
| | : | |
| **Plaintiff,** | : | **Judge Douglas R. Cole** |
| | : | |
| **v.** | : | **Magistrate Judge Bowman** |
| | : | |
| **SHERRY DONAWORTH**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>DEFENDANTS SHERRY DONAWORTH, KRISTA MADDOX, AND JOHN WEIDNER'S MOTION TO DISMISS PLAINTIFF MICHELLA MARSHALL'S COMPLAINT</u>

Defendants Sherry Donaworth, Krista Maddox, and John Weidner (the "Defendants") move this Court under Fed. R. Civ. P. 12 (b)(1) and 12(b)(6) to dismiss Count I (Retaliation in Violation of First Amendment via 42 U.S.C. § 1983) of Plaintiff Michella Marshall's ("Plaintiff") Complaint.

As explained in the Memorandum in Support, this Court lacks subject matter jurisdiction over Count I of the Complaint and Count I fails to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Jada M. Colon*
Philip D. Williamson (0097174)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
301 East Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Fax: (513) 381-0205
pwilliamson@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLA MARSHALL,** | : | **Case No. 1:26-cv-00267** |
| | : | |
| **Plaintiff,** | : | **Judge Douglas R. Cole** |
| | : | |
| v. | : | **Magistrate Judge Bowman** |
| | : | |
| **SHERRY DONAWORTH,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS SHERRY DONAWORTH, KRISTA MADDOX, AND JOHN WEIDNER'S MOTION TO DISMISS PLAINTIFF MICHELLA MARSHALL'S COMPLAINT**

Plaintiff, a former student in the University of Cincinnati's College of Nursing, attempts to recast routine academic discipline for unprofessional conduct as a constitutional retaliation case under 42 U.S.C. § 1983. According to her own Complaint, University administrators responded to a series of increasingly inappropriate and unprofessional communications directed at her course instructor and College of Nursing faculty, found that those communications violated the student code of conduct and the American Nurses Association Code of Ethics, and pursued academic misconduct proceedings that ultimately resulted in her dismissal from the program in December 2025.

Plaintiff nevertheless alleges that she was expelled in retaliation for expressing concerns about the University's diversity, equity, and inclusion initiatives, and seeks to impose liability on Defendants based on that theory. But the allegations in the Complaint foreclose any plausible inference that the Defendants disciplined Plaintiff because of protected speech, rather than because of her admitted violations of applicable professional and academic standards. Her First Amendment retaliation claim therefore fails as a matter of law.

Count I must be dismissed for three independent reasons. First, the Court lacks subject-matter jurisdiction and dismissal is required under Rule 12(b)(1) for Plaintiff's official-capacity claims against Weidner and Maddox to the extent Plaintiff seeks relief barred by sovereign immunity or otherwise asserts claims beyond this Court's limited jurisdiction over official-capacity claims. Second, Plaintiff does not plead a facially plausible claim against Defendants under the governing standards of *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, because she fails to allege facts showing that she engaged in protected speech, that the Defendants took adverse action against her because of such speech, or that any clearly established First Amendment right was violated. Finally, for the individual capacity claims against Donaworth and Maddox, they are entitled to qualified immunity. The Complaint thus fails to state a claim and should be dismissed.

### FACTS

Plaintiff was a student in the University of Cincinnati's ("UC") College of Nursing ("Nursing Program"). (Compl., ECF No. 9 at ¶ 3, PageID 56).[1] Plaintiff was expelled for academic misconduct following a hearing and appeal. (*Id.* at ¶¶ 38-40, PageID 66, 67). As early as October 2024, Plaintiff was notified that her behavior as a student in UC's Nursing Program was unprofessional. (*Id*. at ¶ 25, PageID 64).

The events that led directly to Plaintiff's discipline began in the fall 2025 term, when Plaintiff's communications with course faculty regarding grading escalated. On November 6, 2025, Plaintiff emailed instructor Ashley Carrasquillo about ungraded assignments. (*Id*. at ¶ 26, PageID 64). When she did not receive an immediate response, Plaintiff followed up through UC's Canvas platform. (*Id*.). On November 8, 2025, Plaintiff wrote, "We have a week to complete

---

[1] The facts alleged in the Complaint are taken here as true only for purposes of this Motion.

assignments but instructors have two weeks to grade? Make it make sense. This is just a money grab class." (*Id*. at ¶ 27, PageID 64). On November 11, 2025, responding to a routine request to resubmit a certificate, she entered the comment "Girl just grade my assignment" in the submission box. (*Id*. at ¶ 27a., PageID 64).

Carrasquillo replied on November 12, apologized for grading delays, and stated that she found Plaintiff's tone "concerning and unprofessional," copying Donaworth on the message. (*Id*. at ¶ 27b., PageID 64). Donaworth was the Associate Professor of Clinical Nursing and a lead faculty member for the course in question. (*Id*. at ¶ 4, PageID 56). Donaworth then emailed Plaintiff, emphasizing that "[b]eing a NP is a privilege that assumes both ethical and professional obligations," acknowledging that it is appropriate to email about missing grades, but explaining that she found Plaintiff's tone "disrespectful and unprofessional" and worrying that Plaintiff "may communicate with preceptors in a similar manner." (*Id*. at ¶ 27c., PageID 64, 65).

Plaintiff responded the next day, "Just focus on my grading my assignments. I do not care for your opinion." (*Id*. at ¶ 27d., PageID 65). When Donaworth requested a phone call to discuss her concerns that Plaintiff's communications were "disrespectful and unacceptable," Plaintiff replied on November 15, "I am not obligated to speak to you. The time it took to draft these emails, my assignment could've been graded," and a few days later wrote, "I'm not meeting with you." (*Id*. at ¶¶ 27d., 27e. PageID 65).

On November 18, 2025, Donaworth sent Plaintiff a Notification Form alleging academic misconduct. (*Id*. at ¶ 30. PageID 65). The Notification Form stated that Plaintiff violated professional standards and codes based on "Unprofessional, disrespectful and abusive email communications with faculty on multiple occasions" that were "[i]ncongruent with both the ANA Code of Ethics for Nurses (Prov. #6) and the Student Code of Conduct." (*Id*.). Plaintiff was invited

to meet with Donaworth to discuss the allegations in the Notification Form, but chose not to meet. (*Id*. at ¶ 31, PageID 66).

On November 21, 2025, Donaworth sent Plaintiff a Resolution Form explaining that, even if Plaintiff accepted responsibility, the recommended sanction would be expulsion based on the seriousness and pattern of the conduct. (*Id*. at ¶ 32, PageID 66). That same day, Plaintiff filed a complaint with UC's Office of Equal Opportunity ("OEO"), asserting that the disciplinary proceedings were "discriminatory and retaliatory" and referenced UC's broader decision to eliminate diversity, equity, and inclusion ("DEI") programs and rename the African American Cultural and Resource Center. (*Id*. at ¶ 33. PageID 66). The OEO complaint was ultimately dismissed. (*Id*.). Plaintiff does not allege Defendants received notice of the complaint prior to dismissal.

The disciplinary matter proceeded before a hearing panel on December 12, 2025, administered by Krista Maddox, Senior Assistant Dean, in her capacity as College Conduct Administrator. (*Id*. at ¶ 38, PageID 66). At the hearing, Donaworth testified that Plaintiff's emails were "not appropriate behavior," her language raised concern about how she might interact with clinical preceptors, she allegedly used similar disrespectful language, and she refused to meet with faculty. (*Id*. at ¶¶ 38a.-b., PageID 66, 67). Plaintiff addressed the hearing panel and characterized her emails as "blunt" but not inappropriate, attributing them to cultural differences and claimed she had eleven years of nursing experience without professionalism complaints. (*Id*. at ¶¶ 38c., 38e., PageID 67).

During her presentation, Plaintiff reiterated her disagreement with UC's policy changes and testified that she found Donaworth's statement about "[b]eing a NP is a privilege" offensive

4

in light of "the elimination of DEI and initial biological men and women signs in the bathroom" and her personal connection to a transgender family member. (*Id*. at ¶ 38d., PageID 67).

On December 12, 2025, the hearing panel issued its decision, finding Plaintiff responsible for violating professional standards and issued a sanction of expulsion. (*Id*. at ¶ 39, PageID 67). Plaintiff exercised her right to appeal, and John Weidner, Interim Provost at the time, issued the final decision letter on January 21, 2026 regarding the appeal. (*Id*. at ¶ 40, PageID 67).

Plaintiff filed the Complaint on March 16, 2026. In Count I, Plaintiff seeks declaratory and injunctive relief against Weidner and Maddox and monetary damages against Maddox and Donaworth for violation of the First Amendment under a retaliation theory. (*Id*. at ¶¶ 42-53, PageID 68, 69).

## ARGUMENT

The Court should dismiss Count I of the Complaint because: (1) this Court lacks subject matter jurisdiction over the official capacity claims against Weidner and Maddox based on the Eleventh Amendment, and the *Ex parte Young* exception does not apply; (2) Plaintiff fails to state a claim upon which relief can be granted against Weidner, Maddox, or Donaworth; and (3) Maddox and Donaworth are entitled to qualified immunity from the individual capacity claims against them.

I.      **The Complaint Should Be Dismissed As To The Official Capacity Claim Against Weidner and Maddox Because the Court Lacks Subject Matter Jurisdiction Under the Eleventh Amendment.**

"When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

Plaintiff's First Amendment claim against Weidner and Maddox in their official capacities are, in substance, claims against the State of Ohio and are therefore barred by the Eleventh Amendment, which deprive this Court of subject matter jurisdiction. *See, e.g., McCormick v. Miami Univ.,* 693 F.3d 654, 661 (6th Cir. 2012); *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653–54 (S.D. Ohio 2016); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In Count I, Plaintiff alleged by way of 42 U.S.C. §1983 that Defendants violated the First Amendment. (Compl., ECF No. 9 at ¶ 1, PageID 56). Plaintiff sued Weidner and Maddox in their official capacities (*Id*. at ¶¶ 5.b., 6.b., PageID 57) and seeks the vacation of any disciplinary findings and removal of any negative notation on Plaintiff's record. (*Id*. at WHEREFORE paragraph, PageID 69). For such a claim to evade the Eleventh Amendment, however, it must fall within the exception under *Ex parte Young*.

The *Ex parte Young* exception to Eleventh Amendment immunity applies only where a plaintiff: (1) seeks prospective injunctive relief for an ongoing violation of federal law against a state official in their official capacity; and (2) alleges that the state official has "some connection" to the ongoing violation. *Ex parte Young,* 209 U.S. 123, 157–159 (1908).

For the reasons stated below, Plaintiff's First Amendment claim does not fall within the *Ex parte Young* exception.

### A.  Plaintiff does not seek prospective relief for ongoing violations of federal law.

First, Count I does not seek prospective relief for an ongoing violation of federal law, which are necessary elements of the official capacity claim against Weidner and Maddox. The Court is required to examine Plaintiff's First Amendment claim substantively rather than by the form in which it appears. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). A substantive

6

examination of Count I shows that Plaintiff merely alleges purported constitutional violations that have already occurred, and not an ongoing violation of federal law.

The substance of Plaintiff's claim relates to alleged First Amendment retaliation in the past—that is, before and during Plaintiff's dismissal from the Nursing Program on January 21, 2026. (*See* generally Compl., ECF No. 9). Plaintiff asserts in Count I that Weidner and Maddox, in their official capacity, violated her constitutional rights for actions that already have occurred— initiating disciplinary proceedings against Plaintiff and ultimately dismissing Plaintiff. (*Id*. at ¶¶ 30, 40, PageID 65, 67).

These allegations make it clear that Plaintiff seeks relief for actions related to "a past, one-time decision of [certain University officers] that purportedly violated [her] federal constitutional rights." *S & M Brands*, 527 F.3d at 509. But the exception under *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993); *Doe v. Bowling Green State Univ.*, No. 3:22-cv-140, 2022 WL 4599247, at *6 (N.D. Ohio Sept. 30, 2022). Plaintiff's official capacity claim against Weidner and Maddox, therefore, does not satisfy the first prong of the *Ex parte Young* test.

### B. Plaintiff failed to allege the requisite connection between Weidner and Maddox and the alleged violation.

Plaintiff's § 1983 claim also fails under the second prong of the *Ex parte Young* test. Plaintiff seeks to vacate the disciplinary findings and remove any negative notations from her records, which could constitute prospective injunctive relief. *See Gies v. Flack*, 495 F. Supp. 2d 854, 865 (S.D. Ohio 2007). But a plaintiff who alleges an ongoing violation and seeks prospective, injunctive relief cannot sue just any individual. The individual defendant "must have, by virtue of

the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013).

Accordingly, a plaintiff must allege facts that show how a state official is connected to or responsible for the alleged constitutional violation. *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2020 WL 5361669, at *7 (S.D. Ohio Sept. 8, 2020). This "connection" requirement tracks Article III's standing requirements—injury in-fact, causation, and redressability. *Id.* at *21-22. To satisfy the requirement, a plaintiff must allege facts: (1) that the state official played a role in causing the ongoing harm of which plaintiff complains; and (2) that an injunction against that official will be likely to provide redress. *Id.* at *22. In other words, the state official must have some connection with the enforcement of the act and authority to perform the relief sought. *Id.* at *23.

Plaintiff fails to allege how Weidner or Maddox personally participated in causing a constitutional deprivation—let alone an ongoing one. "The official against whom suit is brought must have the authority to perform the act sought" by the prospective relief. *Ling v. Univ. of Tenn.*, No. 04-2484, 2005 WL 8156688, at *2 (W.D. Tenn. Jan. 4, 2005). *See* also *Masengill v. Univ. of Tenn.*, No. 3:98-CV-137, 2001 WL 34079321, at *6 (E.D. Tenn. Oct. 22, 2001) (rejecting an *Ex parte Young* claim because "it [did] not appear to be within [defendant's] authority to override the employment decision of the state university and the county agency").

Plaintiff pleads no facts that would allow the Court to reasonably infer that Maddox or Weidner have the authority to provide the relief she seeks. For instance, Weidner is mentioned once in the Complaint. (Compl., ECF No. 9 at ¶ 40, PageID 67). The Complaint is devoid of factual content identifying the decision-making authority of Maddox or Weidner to vacate disciplinary findings and remove negative notations from her disciplinary records. Absent such allegations, the

8

Court cannot plausibly infer that Maddox or Weidner have the power to implement the requested injunctive relief—a necessary predicate to any claim proceeding under *Ex parte Young*.

Accordingly, Plaintiff's claim against Maddox and Weidner in their official capacities should be dismissed as barred by the Eleventh Amendment.

## II. Count I Must Be Dismissed Because Plaintiff Failed To State A Claim Upon Which Relief Can Be Granted.

### A. Legal Standard.

The Court should also dismiss Count I against each Defendant for failure to state a claim. A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept factual allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court need not accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements in Fed. R. Civ. P. 8(a). This pleading standard "does not require detailed factual allegations … [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint

9

which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Under §1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Plaintiff seeks to impose §1983 liability upon Donaworth in her individual capacity, Weidner in his official capacity, and Maddox in her individual and official capacities.

Official capacity §1983 claims are limited to prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908).

"[A]n individual-capacity claim seeks to hold an official personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). So, Plaintiff must also set forth facts that the individual defendant "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. That is, the individual defendant "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

To state a claim of First Amendment retaliation under §1983, Plaintiff must plausibly allege: (1) that she engaged in constitutionally protected speech; (2) that the Defendants took an adverse action against her that caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing that speech; and (3) that there is a causal connection between her protected speech and the adverse actions taken against her. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024). And, if she checks those boxes, Plaintiff must also show that her rights

10

were clearly established at the time of the adverse action. *See McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023).

### B. Plaintiff Does Not Plausibly Allege That She Engaged In Protected Speech.

First Amendment freedoms are somewhat constrained in the educational context. *See Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, 594 U.S. 180, 187 (2021). Universities have considerable authority to control student speech in light of the pedagogical roles of the university. *See id*. at 187–88 (summarizing the categories of student speech restrictions); *see* also *Ward v. Polite*, 667 F.3d 727, 732 (6th Cir. 2012) (collecting cases). "[S]chools have a special interest in regulating speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Mahanoy*, 594 U.S. at 188 (cleaned up). "[T]he less the speech has to do with the curriculum and school-sponsored activities, the less likely any suppression will further a legitimate pedagogical concern[ ], which is why the First Amendment permits suppression under those circumstances only if the speech causes substantial disruption of or material interference with school activities." *Ward*, 667 F.3d at 734 (quotation omitted); see also *Mahanoy*, 594 U.S. at 189–91. "Critical to this inquiry, then, is the context and content of the speech, as well as whether the school has a proper pedagogical reason for regulating it." *Diei v. Boyd*, 116 F.4th 637, 646 (6th Cir. 2024).

Here, Plaintiff claims she was dismissed from UC's Nursing Program because of her complaints about the elimination of DEI programs. (*See* generally Compl., ECF No. 9). However, the allegations in her Complaint contradict that claim.

Between November 6, 2025, and November 15, 2025, Plaintiff exchanged several emails with one of her Nursing Program professors and Donaworth regarding her displeasure with the amount of time it was taking the professor to grade a class assignment. (*Id*. at ¶¶ 26-27, PageID

11

64, 65). Plaintiff acknowledges that UC found that the content of her emails violated the student code of conduct and the American Nurses Association Code of Ethics for Nurses. (*Id*. at ¶ 30, PageID 65). Moreover, Plaintiff refused to meet with Donaworth to discuss the concerns. (*Id*. at ¶ 31, PageID 66). Donaworth's professionalism concerns ultimately led to her initiating academic misconduct proceedings against Plaintiff. (*Id*. at ¶¶ 30, 33, PageID 65, 66).

While Plaintiff makes general allegations that she expressed concerns regarding DEI to a "student success coordinator," "academic advisor," "administrator," and "staff," she does not allege she expressed any concern directly to Weidner, Maddox, or Donaworth, aside from a single reference made after the misconduct proceedings were initiated—during the academic misconduct hearing on December 12, 2025 that only Donaworth and Maddox attended. (*Id*. at ¶¶ 24, 38, PageID 63, 66, 67).

As alleged, Plaintiff's emails and a single, isolated reference made during the academic misconduct hearing fall outside the protections of the First Amendment. That is because Plaintiff's communications had to do "with the curriculum and school-sponsored activities[.]" *Ward*, 667 F.3d at 734; *see* also *Yoder v. Univ. of Louisville*, 526 Fed. Appx. 537 (6th Cir. 2013); *Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016). Plaintiff's emails were related to the Nursing Program, grading, and other school-sponsored activities—topics that Plaintiff admits have direct bearing on her nursing studies. (Compl., ECF No. 9 at ¶ 27, PageID 64, 65).

Moreover, here, UC had a genuine educational purpose for regulating Plaintiff's speech. *See Ward*, 667 F.3d at 734. The legitimate pedagogical purpose: training UC students to comport with the norms and ethical standards of the nursing profession. That conclusion directly aligns with *Keefe v. Adams*, which recognizes that "because compliance with the Nurses Association Code of Ethics is a legitimate part of the Associate Degree Nursing Program's curriculum, speech

12

reflecting non-compliance with that Code that is related to academic activities 'materially' disrupts" the Program's 'legitimate pedagogical concerns'." 840 F.3d at 531.[2]

## C. Defendants Did Not Take Adverse Action Against Plaintiff Based On Alleged Protected Speech.

Plaintiff alleges that the Defendants retaliated against her for protected speech by pursuing academic misconduct charges against her. (Compl., ECF No. 9 at ¶¶ 50-51, PageID 68, 69). To constitute an adverse action, however, the challenged conduct must cause the Plaintiff to "suffer an injury that would likely chill a person of ordinary firmness from continuing that activity." *McElhaney*, 81 F.4th at 556. To satisfy this element, "the deterrent effect on speech 'need not be great.'" *Anders v. Cuevas*, 984 F.3d 1166, 1176 (6th Cir. 2021) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (en banc)). Nevertheless, Plaintiff has failed to allege that Weidner, Maddox, or Donaworth took any action that satisfies that standard.

As alleged in the Complaint, Donaworth—not Maddox—initiated the academic misconduct proceedings. (Compl., ECF No. 9 at ¶¶ 28, 50, PageID 65, 68). Maddox merely served as the assigned College Conduct Administrator. (*Id*. at ¶ 28, PageID 65). Under Ohio Adm. Code §§ 3361:40-5-05(B)(2)(a)-(b) and 3361:40-5-05(B)(4), the College Conduct Administrator lacks authority to decide whether charges will be pursued. Thus, Plaintiff has not alleged any adverse action taken by Maddox.

Nor has Plaintiff identified any adverse action by Weidner. The only conduct attributed to him is that he sent Plaintiff the final decision letter regarding her appeal. (Compl., ECF No. 9 at ¶ 40, PageID 67).

---

[2] The conclusion also aligns with *Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015). There, a medical student was denied a degree due to his asserted lack of professionalism, both inside and outside the classroom. *Id*. at 358.

Additionally, Donaworth merely initiating the academic misconduct proceedings (*Id*. at ¶ 30, PageID 65) is not in and of itself an adverse action. *See, e.g., Thompson v. Ohio State Univ*., 92 F. Supp. 3d 719, 735 (S.D. Ohio 2015), *aff'd*, 639 F. App'x 333 (6th Cir. 2016) ("it is entirely unclear whether a referral to a neutral investigative body could violate a constitutional right").

Plaintiff also fails to plausibly allege that Weidner, Maddox, or Donaworth's conduct would have deterred a person of ordinary firmness from engaging in protected speech. To the contrary, Plaintiff alleges that she continued to speak openly during the academic misconduct proceedings, including discussing DEI issues at UC and their relationship to the nursing profession. (*Id*. at ¶ 38, PageID 66, 67) The Sixth Circuit has recognized that the absence of any actual chilling supports the conclusion that a person of ordinary firmness would not have been deterred. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012) ("Our conclusion [that a person of ordinary firmness would not be deterred by the adverse conduct] is supported by the fact that [the plaintiff] was not deterred or chilled in the exercise of his First Amendment rights as the result of defendants' wrongful conduct."). Accordingly, Plaintiff has failed to plausibly allege the adverse action element of her First Amendment retaliation claim.

### D. Plaintiff Has Not Plausibly Alleged That Her Unprotected Speech Caused Her Dismissal From The Nursing Program.

To state a plausible claim for relief, Plaintiff must also allege facts demonstrating that the protected speech "represented a *substantial or motivating* factor in the adverse action." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quoting *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003)). "A 'motivating factor' is essentially but-for cause ...." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007); *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019). It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct. *See Allen v. Iranon,* 283 F.3d

1070, 1076 (9th Cir.2002) (finding in First Amendment retaliation case that "[i]n order to retaliate against an employee for his speech, an employer must be aware of that speech.").

Plaintiff alleges that Donaworth's "motivation is shown by the excessive penalty" she recommended in the Resolution Form. (Compl., ECF No. 9 at ¶ 50, PageID 68). However, Plaintiff has not set forth sufficient facts to connect the "excessive penalty" to her "complaints about the elimination of DEI programs and cultural differences." (*Id*.). To the contrary, Plaintiff alleges the first time Donaworth was made aware of any concerns regarding DEI and cultural differences was at the December 12, 2025 hearing. (*Id*. at ¶¶ 38.d., 38.e., PageID 67). Donaworth issued the Resolution Form recommending Plaintiff's dismissal from UC on November 21, 2025. (*Id*. at ¶ 32, PageID 66). Thus, Donaworth could not have been motivated by Plaintiff's stance on DEI when she issued the Resolution Form.

Plaintiff alleges Maddox's motivation is shown because she "approved the excessive penalty." (*Id*. at ¶ 51.b., PageID 69). But again, Plaintiff admits that Maddox was simply assigned as the College Conduct Administrator. (*Id*. at ¶ 28, PageID 65). As the College Conduct Administrator, Maddox had no power to approve or disapprove the hearing panel's sanction. *See* Ohio Adm. Code § 3361:40-5-05(B)(4).[3]

Plaintiff further alleges Maddox's motivation is shown because she allegedly retaliated against students in 2023 for their views on DEI. (*Id*. at ¶ 51.c., PageID 69). This allegation rests largely on temporal proximity. Maddox was assigned to be the College Conduct Administrator on November 21, 2025. (*Id*. at ¶ 33, PageID 66). This is two years and four months after the alleged events from May 2023—Plaintiff does not allege that she was even enrolled in UC at the time,

---

[3] The hearing panel is made up of one faculty member, one student, and the hearing chair, who may only vote in the event of a tie. *See* Ohio Adm. Code § 3361:40-5-05(B)(4).

15

much less that she was part of the 2023 activities. Even if temporal proximity could provide a suggestion of causation here, temporal proximity alone is rarely, if ever, sufficient to establish causation. *See Vereecke*, 609 F.3d at 400. There generally must be other indicia of retaliatory conduct. *Id.* Plaintiff points to none.[4]

Lastly, Plaintiff makes no allegations against Weidner relating to causation and otherwise fails to allege any facts in the Complaint supporting the same.

### E. Donaworth and Maddox Are Entitled To Qualified Immunity.

Donaworth and Maddox are also entitled to qualified immunity on Plaintiff's First Amendment claim against them in their individual capacities. Qualified immunity shields public officials performing discretionary functions from liability for civil damages unless their conduct violated a constitutional right that was "clearly established" at the time of the alleged misconduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The doctrine reflects a careful balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Accordingly, qualified immunity attaches to all but those who "knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Qualified immunity protects public officials from "the time, expense and risk of money-damages actions" if they did not violate the claimant's clearly established federal constitutional rights. *Moore v. Oakland Cnty.*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quotation omitted).

Qualified immunity is not merely an affirmative defense to liability; it is "an immunity from suit," and an entitlement not to stand trial. *Saucier v. Katz,* 533 U.S. 194, 200 (2001)

---

[4] It is notable that Plaintiff did not challenge Maddox's presence as the hearing chair, based on conflict of interest, per her rights under the Student Code of Conduct. *See* Ohio Adm. Code § 3361:40-5-05(B)(4)(b)(i)(c).

(abrogated on other grounds by *Pearson*, 555 U.S. at 223). For that reason, the Supreme Court has emphasized that courts should resolve qualified immunity questions "at the earliest possible stage in litigation." *Pearson,* 555 U.S. at 232.

Courts apply a two-step inquiry to determine whether qualified immunity applies: (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Cass v. City of Dayton,* 770 F.3d 368, 374 (6th Cir. 2014). To be "clearly established," a legal principle must "clearly prohibit" an official's "conduct in the particular circumstances before him." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "A right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Zorn v. Linton*, 146 S.Ct. 926, 930 (2026) (per curiam) (citation omitted).

A right is "clearly established" only if existing precedent placed the constitutional question "beyond debate," such that every reasonable official would understand that the challenged conduct violated the Constitution. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation modified).

The Supreme Court has repeatedly warned courts not to "define clearly established law at a high level of generality." *Wesby*, 583 U.S. at 63. Instead, the inquiry must be undertaken "in light of the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation and quotation omitted). "[I]t is only in extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find 'clearly established law.'" *Walton v. City of Southfield,* 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by statute on other grounds as recognized*

17

*in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407-08 (6th Cir. 2007). A plaintiff ultimately bears the burden to show that the public official is not entitled to qualified immunity. *Guertin v. Michigan,* 912 F.3d 907, 917 (6th Cir. 2019).

Here, the right at issue is Plaintiff's ability to email, under her own name, about topics related to her nursing studies in a way that materially interfered with the pedagogical interests of UC and its Nursing Program. Against that backdrop, the question is whether a reasonable public official would have understood that Plaintiff's speech was protected. *See Crawford-El v. Britton*, 523 U.S. 574, 590 (1998). Based on the cases cited above, a reasonable public official would not have understood that Plaintiff's speech was protected. Plaintiff's speech related to the Nursing Program and a legitimate pedagogical purpose was the cause of Plaintiff's expulsion from the Nursing Program. Indeed, a university may use a professionalism policy to inculcate graduate students with the norms and expectations of their professions, preparing them for their future endeavors. *See, e.g., Keefe*, 840 F.3d at 531; *Hunt v. Bd. of Regents of the Univ. of New Mexico*, 792 F. App'x 595, 605 (10th Cir. 2019). In other words, universities have the "space" to discipline "speech by students in professional schools that appears to be at odds with customary professional standards." *Hunt*, 792 F. App'x at 605. Because Donaworth and Maddox did not commit a constitutional violation of a clearly established right, they are entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ Jada M. Colon
Philip D. Williamson (0097174)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
301 East Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Fax: (513) 381-0205
pwilliamson@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

19

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2026, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

/s/ Jada M. Colon