**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

MICHELLA MARSHALL,

PLAINTIFF,

v.

SHERRY DONAWORTH, ET AL.,

DEFENDANTS

Case No. 1:26-cv-00267

Judge:  Douglas R. Cole

RESPONSE    TO    MOTION    TO
DISMISS

Plaintiff Michella Marshall respectfully submits this Response to the Motion to Dismiss. (Doc.10.)

**FACTS**

Marshall is a former student at UC College of Nursing.  Defendants are professors and administrators at the University of Cincinnati. at the University of Cincinnati.

Prior to attending the University of Cincinnati College of Nursing, Marshall graduated *cum laude* with a Bachelor of Science in Nursing and a Master of Science in Nursing from Cleveland State University.  Marshall's professional nursing included work as an Intermediate Care Unit Nurse at University Hospitals in Cleveland and as a travel nurse.  Marshall served as a Nursing Supervisor at University Hospitals and has held a position as a Clinical Instructor for LPN and RN programs at Hondros College of Nursing.

Over the past few years, Marshall, along with other students, faculty, and staff, voiced concerns about a lack of diversity, equity and inclusion within the College of Nursing.   A 2020 case study highlighted the need for systemic change to address, report, and mitigate these issues to create a more inclusive and equitable learning space for all students.   Concerns about a lack of diversity, equity and inclusion within the College of Nursing and other programs at UC were raised at a meeting at the African American Cultural & Resource Center.  A forum was held in November 2022 in response to

an incident where a racist, hateful letter was sent to a Black faculty member at UC.  At this forum, one instructor said, "Racial discrimination and microaggressions are experienced by Black people in the College of Nursing, as elsewhere on campus" and noted that African-American students may fear to speak out for fear of retaliation.  At a subsequent forum, the College of Nursing Dean apologized for racism students experienced in the past and promised to build a more equitable future.  In May 2023, a change.org petition specifically accused one of the Defendants – Maddox – of retaliation against individuals who spoke out in favor of DEI initiatives at the College of Nursing.

In February 2025 UC announced it would begin dismantling its Diversity, Equity, and Inclusion (DEI) programs in response to state and federal pressure.  This decision was primarily driven by the threat of losing federal funding following an executive order and a "Dear Colleague" letter from the Trump administration that effectively outlawed DEI practices at public universities.  University President Neville Pinto stated that the institution had "little choice" but to comply, given its heavy reliance on federal funding.

Marshall expressed significant opposition UC's changes to DEI programs.  She viewed these institutional changes as evidence that the university's values did not align with her own, and she explicitly linked these grievances to her defense during her academic misconduct proceedings.  On February 25, 2025, Marshall emailed her student success coordinator and academic advisor stating that she was "contemplating dropping out" or transferring to a university that "aligns with my values" due to UC's decision to roll back DEI programs.  In the fall of 2025, Marshall complained to the Embedded Counselor for the College of Nursing about the use of language reinforcing Black stereotypes.

In November 2025 Marshall complained about delays in grading assignments.[1]  She wrote, "We have a week to complete assignments but instructors have two weeks to grade? Make it make sense. This is just a money grab class."  In response to a  request to resubmit a certificate, Marshall posted a comment in the submission box: "Girl just grade my assignment."  Donaworth responded to the emails.  Donaworth wrote that "Being a NP is a privilege that assumes both ethical and professional obligations."  Donaworth also wrote, "It's entirely reasonable and appropriate to email a professor regarding a missing grade, as assignments can certainly be overlooked. However, I find the tone of your email disrespectful and unprofessional. It's also worrisome to me that you may communicate with preceptors in a similar manner." Marshall responded, "Just focus on my grading my assignments. I do not care for your opinion."  Donaworth wrote back, "Your response to my email is disrespectful and unacceptable. We need to schedule a phone call to discuss these issues." Marshall responded, "I am not obligated to speak to you. The time it took to draft these emails, my assignment could've been graded."  A few days later, she wrote, "I'm not meeting with you."

A few days later, Donaworth started the process for discipline for academic misconduct. Marshall complained that her language was not offensive in "my culture." Marshall further complained that the professors' actions were "discriminatory and retaliatory in nature."  She explained:

> [Donaworth] also stated in an email that being an NP is a privilege, upon graduation students represent the university all over the country, and this responsibility is taken seriously.
>
> The university eliminated their DEI programs and renamed the African American Cultural and Resource Center (AACRC) to the Cultural Center. As a black woman who faces discrimination every day, and has advocated for patients of color, why would I care about representing a university that does that care to represent me?

---

[1] This was not the first time Marshall had complained about delays in grading or had been accused of using unprofessional language in emails.  In October, 2024, an instructor had sent an email to Marshall regarding tone in emails about a "Group Case Study" and "Photo Quiz."  In November 2025, Marshall emailed an instructor Ashley Carrasquillo inquiring about ungraded assignments.

Donaworth sent Marshall a Notification Form regarding Academic Misconduct.  The form cites "Violating Professional Standards/Codes."  Donaworth later sent Marshall a "Resolution Form," indicating that even if Marshall accepted responsibility for misconduct, the recommended penalty would be expulsion.  The same day, Marshall submitted a complaint to UC Office of Equal Opportunity (OEO).  The complaint noted that he disciplinary proceedings against her were "discriminatory and retaliatory."

A Hearing Panel was convened via Zoom on the charges against Marshall.  Maddox was responsible for the operation of the Panel and insuring that it complied with applicable rules. Donaworth testified that Marshall's email were "not appropriate behavior… it was indeed okay to email faculty regarding a missing grade, that sometimes oversights can happen, but that that was not the appropriate language to use."  Marshall told that hearing panel that her email was sent according to instructions in the course syllabus.  She characterized her emails as "blunt" but not inappropriate. Marshall also indicated her belief that the phrase "being a NP is a privilege" and that the students would "represent the University of Cincinnati across the country" was offensive to her "given the context of the country is now…"  She said:

> So I took that as an offence also, as far as the University of Cincinnati, representing that across the country, as the elimination of DEI and initial biological men and women signs in the bathroom that were since taken out. I have a transgender niece. So that I took offense to that."

Marshall explained that she has been working as a nurse for 11 years and "I've never had any complaints in regard to my professionalism with anything."

Marshall was found responsible and was expelled.  This litigation followed.

## ARGUMENT

### A.      Standard

In deciding whether to grant a Rule 12(b)(6) motion, this Court is required to accept all well-pleaded factual allegations of the Complaint as true and construe the complaint in the light most favorable to the plaintiffs.  *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012), *quoting Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). The  Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants also assert a Rule 12(b)(1) facial challenge to the Court's jurisdiction over certain claims under the Eleventh Amendment.  "Dismissals under Eleventh Amendment immunity . . . come under Rule 12(b)(1), which covers dismissals for lack of subject-matter jurisdiction."  *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir. 2024).  *See also WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513 (6th Cir. 2021) (Eleventh Amendment immunity "sounds in subject-matter jurisdiction").  The party "asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state."  *Lowe v. Hamilton County Dep't of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010).

### B.      Eleventh Amendment And Common Law Immunity

#### 1.      The Injunctive Relief Sought Is Prospective

Defendants claim that the request in the Complaint to vacate the disciplinary findings and remove negative notations from her record fails to seek prospective relief as required by *Ex Parte Young*. Def. Memo. at PageID#77-78.  Defendants' arguments fail to acknowledge or address the controlling decisions from the Sixth Circuit and other contrary decisions from this Court.  *Doe v.*

5

*Cummins*, 662 Fed. Appx. 437 (6th Cir. 2016); *Noakes v. Univ. of Cincinnati*, 6th Cir. No. 24-3388, 2024 U.S. App. LEXIS 27189, at *6 (Oct. 25, 2024); *Doe v. Univ. of Cincinnati,* S.D.Ohio No. 1:16-c-v987, 2018 U.S. Dist. LEXIS 51833 (Mar. 28, 2018); *Doe v. Wright State Univ.*, S.D.Ohio No. 3:16-cv-469, 2017 U.S. Dist. LEXIS 136225, at *17 (Aug. 24, 2017).

The Eleventh Amendment immunizes states from suits seeking to redress past harms. *Block v. Canepa*, 74 F.4th 400, 406 (6th Cir. 2023).  The Eleventh Amendment does not bar suits for injunctive relief against state officials acting in their official capacities so long as the relief sought is "prospective in nature and designed to ensure future compliance with federal law." *Cummins*, 662 Fed. Appx. at 444 *citing Ex Parte Young*, 209 U.S. 123, 155-56, (1908), and *Edelman v. Jordan*, 415 U.S. 651, 666-69 (1974). Plaintiff's claims in this case are not barred by the Eleventh Amendment because she seeks prospective relief, including an injunction "vacating any disciplinary findings [and] compelling Defendants to remove any negative notation from Plaintiff's disciplinary records."  (Am. Complaint, PageID#69.)

In *Cummins*, the Sixth Circuit held that the Eleventh Amendment did not prohibit injunctive relief requiring UC officials to remove negative disciplinary information from a student's educational records.  In that case, just like in this case, the Sixth Circuit considered § 1983 claims that UC had imposed discipline in violation of students' constitutional rights.[2]  The Sixth Circuit flatly rejected the exact same argument made by Defendants here:

---

[2] As in *Cummins*, the injunctive relief sought in this case does not require any monetary obligation. The *Cummins* court observed that if the injunctive relief does not impose a monetary burden upon the State itself, then the injunctive relief usually can be considered prospective in nature and is allowable under the Eleventh Amendment.  662 F.App'x 437 at 444 (describing the monetary issue as "a factor often dispositive when examining the availability of injunctive relief under the Eleventh Amendment").  This is because injunctive "relief should not be granted if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Barton v. Summers*, 293 F.3d 944, 947 (6th Cir. 2002). *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir.2008), cited by Defendants, is distinguishable on this basis.  Def. Memo at PageID#78. *S&M Brands* was a disguised attempt to recover money damages or refunds from a state and was thus barred by the Eleventh Amendment.

> Because [the students] are seeking prospective equitable relief, their claims are not barred by the Eleventh Amendment. [The students] are requesting an injunction against the individual defendants in their official capacity "prohibiting the imposition of, or reporting of, any disciplinary actions under the UC Code of Student Conduct." … If successful, this claim would not require the court to grant any retroactive or compensatory remedy. Rather, the individual defendants would merely be compelled to remove the negative notation from [the students'] disciplinary records that resulted from the allegedly unconstitutional disciplinary process. This is nothing more than prospective remedial action.

662 F.App'x at 444. The Sixth Circuit re-affirmed that decision in *Noakes*. In *Noakes,* the Sixth Circuit held that "the Eleventh Amendment is no bar" where a plaintiff "wants the named administrators to expunge his disciplinary record, which 'is, as a practical matter, prospective relief.'" *Noakes,* 2024 U.S. App. LEXIS 27189, at *6, *quoting Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024). *See also Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (stating that a claim for reinstatement to school is a claim for prospective relief allowed under the Eleventh Amendment); *Doe v. Purdue University*, 928 F.3d 652, 666 (7th Cir. 2019) (injunction requiring officials to expunge a finding of guilt from a student's disciplinary record was not precluded by the Eleventh Amendment); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (action to remove negative notation on student transcript was "prospective in nature" and not barred by Eleventh Amendment); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (expungement of a school disciplinary record is prospective injunctive relief).

*Cummins* is dispositive of Defendants' prospective relief arguments.[3] Although an unpublished decision, since *Cummins* this Court has held that an injunction seeking to prevent the imposition of

---

[3] The only post-*Cummins* decision Defendants rely upon is from the Northern District of Ohio, *Doe v. Bowling Green State Univ.*, N.D.Ohio No. 3:22-cv-140, 2022 U.S. Dist. LEXIS 179939 (Sep. 30, 2022). This decision, to the extent it is contrary to *Cummins* and the decisions of this Court, is not persuasive (much less controlling). Only one case in this Circuit has cited to *Bowling Green* – and not only did that court not even mention the Eleventh Amendment aspect of the *Bowling Green* decision, that court, citing *inter alia Cummins*, reached the exact opposite conclusion on this particular issue. *Hedrick v. W. Michigan Univ.*, W.D.Mich. No. 1:22-cv-308, 2022 U.S. Dist. LEXIS 189225, at *29 (Oct. 17, 2022) (explaining that "declaratory and prospective injunctive relief, including reinstatement… and the

7

disciplinary sanctions by a school is prospective relief not barred by the Eleventh Amendment. In

*Doe v. Univ. of Cincinnati*, for example, this Court followed *Cummins* on this issue, stating:

> The Sixth Circuit has held that a request that individual defendants sued in their official capacity be enjoined from reporting any disciplinary actions taken by the university would not require the court to grant any retroactive or compensatory remedy.

2018 U.S. Dist. LEXIS 51833, at *4.[4] In *Doe v. Wright State Univ.*, this Court similarly held, "to the

extent [the student] is seeking to prevent [a school] from reporting, through disclosures of his

transcript and student record, that he was expelled for disciplinary reasons, such relief is

constitutionally permissible" under the Eleventh Amendment. 2017 U.S. Dist. LEXIS 136225, at

*17.[5]

---

expungement of any reference to [a student's] expulsion" was "not barred by the Eleventh Amendment; they are permitted by *Ex Parte Young*.").

[4] This 2018 decision was issued *after* the Sixth Circuit affirmed this Court's grant of a preliminary injunction. In the Sixth Circuit, UC did not even raise any Eleventh Amendment issues. *See* Appellant's Brief, Case: 16-4693 (Doc#14).

[5] This Court, in *Noakes*, held that the fact that a student does not actually plead for reinstatement or express a desire to re-enroll was not relevant to the Eleventh Amendment analysis, noting that "the Sixth Circuit has been abundantly clear on this question." *Noakes v. Univ. of Cincinnati*, S.D.Ohio No. 1:23-cv-284, 2024 U.S. Dist. LEXIS 80374, at *7 (May 2, 2024). Nonetheless, by vacating the disciplinary finding, Plaintiff *could* be reinstated as a student in good standing at UC – relief that this Court has *also* specifically held to be prospective. *See Roe v. Adams-Gaston*, S.D.Ohio No. 2:17-cv-945, 2018 U.S. Dist. LEXIS 185697, at *44 (Apr. 17, 2018) ("[The student] seeks prospective relief to end a continuing violation of federal law: an injunction restoring her as a student and prohibiting further disciplinary proceedings that violate her constitutional rights."); *Schwartz v. Univ. of Cincinnati College of Medicine*, 436 F. Supp. 3d 1030, 1038 (S.D.Ohio 2020) ("Plaintiff's claims against the individual defendants in their official capacities are permissible to the extent Plaintiff seeks reinstatement…"); *Reeves v. Shawnee State Univ.*, S.D.Ohio No. 1:16-CV-00765, 2017 U.S. Dist. LEXIS 29674, at *10 (Mar. 1, 2017) ("the Eleventh Amendment would not prohibit official capacity claims against university officials for injunctive relief requiring a plaintiff's reinstatement…"); *Saqr v. Univ. of Cincinnati*, S.D.Ohio No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394, at *20-21 (Sep. 8, 2020) (rejecting Eleventh argument by UC because students sought "prospective relief in the form of an Order reinstating them as students. And that prospective relief is designed to prevent alleged ongoing federal law violations").

### 2.     The Individual Defendants Sued In Their Official Capacity Are Proper Defendants

Defendants claim that the Individual Defendants lack the necessary connection to the unconstitutional conduct required by *Ex Parte Young.* Def. Memo. at PageID#79.   Defendants' argument confuses the standard required for (i) claims seeking monetary relief against state officials in their individual capacity and (ii) claims seeking injunctive relief against state officials in their official capacity. As with Defendants' arguments concerning prospective relief, Defendants fail to acknowledge or address the contrary and controlling decisions from this Court and the Sixth Circuit. ˜These decisions hold that *Ex Parte Young* allows for claims seeking prospective relief against state officials who have "some connection" to the ongoing federal violation. *Durham v. McWhorter*, 789 F. App'x 533, 534 (6th Cir. 2020).  The "some connection" standard, when it comes to state officials sued in an official capacity for injunctive relief, is satisfied by showing that the defendant has "responsibility" for the unconstitutional practice so that they can be ordered to provide the requested relief.  *Saqr*, 2020 U.S. Dist. LEXIS 163394, at *22-23 ("the 'some connection' requirement… is typically stated in terms of 'responsibility'"),[6] *citing Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (the "some connection" standard is satisfied by naming officials who have "responsibility for" the allegedly unconstitutional actions).  *See also Doe v. Dewine*, 910 F.3d 842, 849 (6th Cir. 2018) (finding sufficient connection where the defendants were "actively involved with administering" the challenged laws); *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 fn.5 (6th

---

[6] In *Saqr*, the primary case cited by Defendants, the plaintiffs merely stated that school officials were "agents and decision makers" at UC.  The *Saqr* plaintiffs failed, as is done in the Complaint here, to "include any allegations as to positions that [defendants] hold" that "grants authority to implement the injunctive relief that the [plaintiffs] desire."  2020 U.S. Dist. LEXIS 163394, at *23-24.  *Compare Taaffe*, *infra,*, 2016 U.S. Dist. LEXIS 57397, at *19 (finding that the proper defendant in a lawsuit against a state university was the officials with "authority to reinstate the Plaintiffs to their former positions").

9

Cir.1982) (noting that *Ex Parte Young* requires only "that the state officer sued have 'some connection" with the enforcement of the allegedly unconstitutional" policy); *ABC v. Blackwell*, 479 F. Supp. 2d 719, 729 (S.D. Ohio 2006) (finding sufficient connection where the defendant controlled the applicable process).

In this case, the alleged constitutional violation was retaliatory disciplinary proceedings and the subsequent dismissal of Plaintiff from UC.  The Individual Defendants have "some connection" to that alleged violation because, according to the Complaint, they are the officials who have the "responsibility for implementing the various policies and procedures UC has adopted related to student conduct and the enforcement of Title IX."  (Amended Complaint ¶¶ 5(b), 6(c), 38, 40.)

In *Noakes*, *supra*, the Sixth Circuit explained that individual defendants who administer policies and maintain disciplinary records have "some connection" to allegations that discipline was imposed in violation of constitutional rights.  2024 U.S. App. LEXIS 27189, at *7.  Defendants' focus on what role each individual Defendant played in the unconstitutional process incorrectly applies *Ex Parte Young* by confusing cases seeking injunctive, as opposed to monetary, relief.  In a suit for money damages against a state official sued in his or her individual capacity, the plaintiff must allege that the defendant was personally involved in the actions constituting a violation of the plaintiff's constitutional rights; but in a suit for injunctive relief, the focus is on whether the individual defendants can provide the relief requested.  This Court has explained:

> It is true that in a suit for money damages against a state official sued in his or her individual capacity, the plaintiff must allege that the defendant was personally involved in the actions constituting a violation of the plaintiff's constitutional or statutory rights. But when only prospective injunctive relief is requested, that type of showing is unnecessary. *The proper defendants in such an action are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue.* Otherwise, plaintiffs in these types of situations would potentially be left without any remedy if the groups of defendants who violated the law and those who could fix the problem if ordered to do so were mutually exclusive.

10

*Taaffe v. Drake*, S.D.Ohio No. 2:15-CV-2870, 2016 U.S. Dist. LEXIS 57397, at \*16 (Apr. 29, 2016) (emphasis supplied, citation omitted).  Consistent with this analysis, the Complaint alleges that the Individual Defendants have "the authority to provide all of the injunctive relief sought in this Complaint." (Am. Complaint ¶¶ 5(b), 6(b).)  *Cf. Doe v. N. Michigan Univ.*, 393 F. Supp. 3d 683, 693 (W.D.Mich. 2019) ("Plaintiff can pursue a claim against Defendants… in their official capacities that would grant Plaintiff reinstatement").  This Court has provided injunctive relief against similarly situated school officials.  In *Doe v. Univ. of Cincinnati*, this Court ordered an injunction against the UC administrators responsible for implementing the school's Title IX policy.[7]  223 F. Supp. 3d at 706. And in *Roe v. Adams-Gaston*, this Court found that officials, including the school official who oversaw the schools Title IX reports and investigations and had "responsibility and authority for the discipline of all students," were proper defendants under *Ex Parte Young*.  2018 U.S. Dist. LEXIS 185697, at \*41-42

**C.** **Plaintiff Asserts A Valid § 1983 First Amendment Retaliation Claim**

**1.** **Elements of First Amendment Retaliation Claim**

A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

---

[7] In *Reeves v. Shawnee State Univ.*, *supra*, this Court rejected a motion to dismiss against certain school officials.  The school, like defendants, had argued that the individual defendant were not proper defendants not because of their limited role, but because they lacked the authority to reinstate the plaintiff.  This Court denied the Motion to Dismiss, allowing further discovery on the issue.  2017 U.S. Dist. LEXIS 29674, at \*10-12.  While Plaintiff believes the Motion should just be denied outright, the Court could, instead, like in *Reeves*, deny the Motion without prejudice and permit discovery. Defendants could then raise the matter again at summary judgment (or Plaintiff could file an appropriate Motion to Substitute if discovery reveals that a different official at UC should have been named).

*Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019), *quoting Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017).

### 2. Plaintiff Engaged In Protected Speech

Plaintiff engaged in protected speech when she complained about UC's efforts to restrict DEI programs. (Am. Complaint at PageID#63-64. (stating that Marshall expressed significant opposition UC's changes to DEI programs). Prior to the start of any disciplinary proceedings, she expressed her views in emails to her student success coordinator and academic advisor. She at one time stated, "Unless you have navigated life as a black woman, you could never 'understand' how I feel." (Am. Complaint at PageID#63.) Marshall complained to the Embedded Counselor for the College of Nursing about the use of language reinforcing Black stereotypes. Later, Marshall complained that the professors' "lack of understanding of the word highlights bigger issues with understanding cultural differences and quite frankly is discriminatory." Marshall explicitly complained that the professors' actions were "discriminatory and retaliatory in nature" and specifically noted that UC had "eliminated their DEI programs and renamed the African American Cultural and Resource Center (AACRC) to the Cultural Center. (Am. Complaint at PageID#65-66.) Finally, Marshall submitted a complaint to UC Office of Equal Opportunity stating, "The university eliminated their DEI programs and renamed The African American Cultural and Resource Center (AACRC) to the Cultural Center" and that the disciplinary proceedings against her were "discriminatory and retaliatory." (Am. Complaint at PageID#66.)

It is often difficult "for a plaintiff to have smoking gun evidence that a defendant knew of her protected speech or for a defendant to admit such knowledge." *Valentino v. Vill. of S. Chicago Hts.*, 575 F.3d 664, 672 (7th Cir. 2009). However, given the entirety of the complaint, Plaintiff has alleged sufficient facts to support an inference that the defendants were aware of her speech on DEI issues. Defendants, instead of addressing these statements, seek to conflate Plaintiff's statements to

professors in her emails with her protected speech on DEI issues.  Indeed, the Complaint does not say that Plaintiff's emails were protected speech (or even not problematic).  Instead, the complaint states that Plaintiff engaged in protected speech outside of the emails with professors, and that she was subjected to "an excessive penalty – expulsion – for what appears to be minor violations of the Student Code of Conduct in retaliation for her protected speech.

UC asserts that it had a "genuine educational purpose for regulating Plaintiff's speech."[8]  Def. Memo. at PageID#83.  This may be true for the emails to her professors, but this does not apply to Marshall's statements about the rollback of DEI programs.  And it does not permit UC to use some unprofessional emails as a pretext to retaliate against protected speech.  The Sixth Circuit has previously held that allegation of racial discrimination by University of Cincinnati officials is constitutionally protected speech.  *Nailon v. Univ. of Cincinnati*, 715 F.App'x 509, 514 (6th Cir. 2017), *citing Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008). ("[T]he right to criticize public officials is clearly protected by the First Amendment.").  This decision is consistent with the observation that "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003), *quoting Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).  Nowhere is this free trade in ideas "more vital than in the community of American schools [of higher learning]." *Healy v. James*, 408 U.S. 169, 180 (1972) (internal citation and quotation marks

---

[8] Defendants rely upon *Ward v. Polite*, 667 F.3d 727, 733 (6th Cir. 2012).  Def. Memo. at PageID#82. *Ward* is inapposite.  *Ward* involved a student who expressed a conviction that her faith's opposition to same-sex couples prevented her from completing a graduate-level counseling program.  667 F.3d at 729.  *Ward*, thus involved speech inside of class assignment; the court observed that "That the First Amendment protects speech in the public square does not mean it gives students the right to express themselves however, whenever and about whatever they wish on school assignments or exams."

omitted). Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Instead, the First Amendment acquires a special significance in the university setting, where the free and unfettered interplay of competing views is fundamental to our society. *See Grutter v. Bollinger*, 539 U.S. 306, 329 (2003) ("given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition.").

### 3. Defendants Took An Adverse Action

Defendants next suggest that no "adverse action" was taken by Maddox or Weidner. "Adverse actions beyond those that create only *de minimis* negative consequences offend the Constitution." *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021), *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (*en banc*). The *Kubala* court explains:

> The adverse action need not actually chill or silence the plaintiff's First Amendment activities. Nor must the plaintiff possess an Olympian fortitude. A plaintiff need only show that the adverse action would deter a person of ordinary firmness from exercising his First Amendment rights.

984 F.3d at 1139, *citing Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010); *Harris v. Bornhorst*, 513 F.3d 503, 519 (6th Cir. 2008).

In this case, the Complaint alleges that after Donaworth initiated the misconduct charges against Marshall, the charges were then pursued by Maddox, who was "responsible for the operation of the Panel and ensuring that it complied with applicable rules." (Am. Complaint at PageID#66.) The Complaint further alleges that Plaintiff was expelled in retaliation for her protected activity. The Sixth Circuit has held that this is sufficient to constitute an adverse action. *Diei v. Boyd*, 116 F.4th 637, 648 (6th Cir. 2024). In *Diei* the court held that after a committee investigated and voted to expel a student, this constituted an adverse action because "she feared that her continued speech could compromise her professional studies." The court observed that "investigations and expulsion were

sufficient to chill a person of ordinary firmness." The *Diei* Court relied on *Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014). In *Benison,* the Sixth Circuit held that the threat of putting a hold on a transcript was sufficient to constitute an adverse action. The *Diei* court observed, "If threatening a transcript's release is an adverse action, then so is initiating an expulsion." Other courts have similarly held that expulsion from school has a sufficiently chilling effect to constitute an adverse action. *See Doe v. Tennessee State Univ.*, M.D.Tenn. No. 3:25-cv-00683, 2026 U.S. Dist. LEXIS 110505, at *27 (May 19, 2026) ("an expulsion qualifies as an 'adverse action' for purposes of the First Amendment retaliation claim"); *Cornelius-Millan v. Caribbean Univ., Inc.*, D.P.R. No. 13-1873, 2015 U.S. Dist. LEXIS 54200, at *9 (Apr. 23, 2015) (finding adverse action where student was expelled from the university). *Cf. Tamfu v. Natarajan,* W.D.Tex. No. SA-11-CA-758, 2011 U.S. Dist. LEXIS 148680, at *19 (Dec. 15, 2011) ("plaintiff's temporary dismissal is an adverse action").

Defendants are correct that there is no adverse action by Weidner but that is of no consequence – Weidner is sued in an official capacity for injunctive relief only. (Am. Complaint at PageID#57.)

### 4.       Plaintiff Alleges Sufficient Causation

Defendants challenge the alleged motivation offered by Plaintiff in the Complaint. Def. Memo. at PageID#86. While Defendant's arguments may be appropriate for a motion for summary judgment they are without merit in a motion to dismiss. The Court's focus at this stage is on the sufficiency of the Amended Complaint, not the sufficiency of the plaintiff's evidence. In most cases, "[a] defendant's motivation for taking action against the plaintiff is… a matter best suited for the jury." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 545 (6th Cir.2012).

To satisfy the causation element of a First Amendment retaliation claim, Plaintiff must demonstrate (1) that a defendant proximately caused the adverse action and (2) that a defendant was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."

15

*King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). On a motion to dismiss, the Court is required to assume Plaintiff's factual allegations to be true. Plaintiffs allege that the reason given for her expulsion is merely pretext for retaliation. This allegation is supported by factual allegations that this is "an excessive penalty… for what appears to be minor violations of the Student Code of Conduct." Thus, it is not relevant whether Plaintiff's emails was unprofessional – "the heart of a First Amendment retaliation claim,… is that [a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Wenk v. O'Reilly*, 783 F.3d 585, 599 (6th Cir. 2015). Allegations that the punishment of expulsion was grossly excessive in light of the alleged infraction of sending an unprofessional email are, thus, sufficient to survive a motion to dismiss – "This strikes us as swatting a fly with a sledge hammer." *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290-291 (7th Cir. 1999) ("grossly excessive" penalty could lead to inference of improper motive). *See also Stockdale v. City of Gallatin, M.D.Tenn.* No. 3:19-cv-00684, 2021 U.S. Dist. LEXIS 252343, at *44 (Feb. 8, 2021) ("evidence that the disciplinary actions were allegedly excessive" was one of several factors which could give "rise to an inference of a causal connection"); *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999) (subjecting an employee to excessive scrutiny maybe evidence of retaliatory conduct); *Harrison v. Metropolitan Government*, 80 F.3d 1107, 1119 (6th Cir.1996) (causal connection permissible where there was "an atmosphere in which the plaintiff's activities were scrutinized more carefully"); *Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 302 (6th Cir.) (jury could find that dismissal "was unjustified in terms of the relatively minor nature of the alleged misconduct it revealed").

Plaintiff does not bear the burden to definitively disprove a claimed legitimate, nonretaliatory reason for her expulsion at this stage of the case. Indeed, Defendant bears this burden of production once Plaintiff has made out a *prima facie* case. If Defendant proffers a legitimate, nonretaliatory reason for Plaintiff's expulsion, Plaintiff may seek to develop evidence that the proffered reason is pretext for

unlawful retaliation. Plaintiff is not required to allege that the proffered reason for her expulsion is mere pretext at the pleading stage.

Finally, Defendants also allege, according to the Amended Complaint, "Maddox was simply assigned as a coordinator and "the first time Donaworth was made aware of any concerns regarding DEI and cultural differences was at the… hearing." Def. Memo. at PageID#86. But this is not what the Amended Complaint says. The Amended Complaint, instead, states that these concerns were raised at the hearing – not that this was the first time Donaworth or anyone else at UC would have been aware of them. Moreover, on the same date Donaworth sent Marshall a "Resolution Form," Marshall submitted a complaint to the UC Office of Equal Opportunity alleging that the disciplinary proceedings against her were "discriminatory and retaliatory."

## D.     Defendants Are Not Entitled To Qualified Immunity At This Stage

Defendants argue that they are entitled to qualified immunity for the claims against them in their individual capacities. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### 1.     The Court Should Defer Ruling On Qualified Immunity

The Sixth Circuit has observed that "although the plaintiff ultimately bears the burden of showing that a defendant is not entitled to qualified immunity, that burden is not high at the 12(b)(6) stage." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). As a result, the Sixth Circuit has explained that "although qualified immunity is available at the motion to dismiss stage, "it is generally inappropriate… to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Id.*, *quoting Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021). "Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually

17

summary [*434] judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir.2015), *quoting Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003). Accordingly, this Court should defer a qualified immunity determination to summary judgment because development of the factual record is necessary to determine whether Defendants' actions violated a clearly established law. *See MacIntosh*, 69 F.4th at 315.

### 2. It Is Clearly Established That School Officials May Not Discipline A Student For The Purpose Of Retaliating Against The Free Speech

Defendants focus on the "clearly established" prong of the well-known qualified immunity inquiry. *See Plumhoff v. Rickard*, 572 U.S. 765, 773-74, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) (when reviewing a claim of qualified immunity, courts must consider a two-prong test). For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Defendant mis-interpret the clearly established right. The clearly established right in this case is not the right to send emails that her professors may have interpreted as unprofessional. *Compare* Def. Memo. at PageID#89. The clearly established right is that school officials may not discipline a student for the purpose of retaliating against the student's protected speech. Plaintiff does not assert a claim for violation of her right to send emails to professors; Plaintiff alleges that the Defendants retaliated against her based on speech about SEI issues. This right is clearly established because reasonable school officials understand that disciplining a student, if taken for the purpose of retaliating against the student's speech, violates that student's First Amendment rights. The Sixth Circuit has held that this right, like many other First Amendment rights at schools, is clearly established. In *Kesterson v. Kent State Univ.*, 967 F.3d 519, 525 (6th Cir. 2020), the court said that it was now "beyond debate" that employees at a "state university cannot retaliate against a [student] for speaking out…" The court held:

18

> For decades, employees at "state colleges and universities" have known that those institutions "are not enclaves immune from the sweep of the First Amendment." *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) (per curiam) (quotation omitted). Students may exercise their First Amendment rights unless doing so would "materially and substantially disrupt" school operations. *See Healy v. James*, 408 U.S. 169, 189 (1972) (quotation omitted); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988). And school officials may not retaliate against students based on their protected speech. *See Papish,* 410 U.S. at 670; *see also Kincaid v. Gibson*, 236 F.3d 342, 354 (6th Cir. 2001).

*Id.* In *Kesterson,* for example, the court held that a reasonable school official would have known that the First Amendment prohibited retaliation against a student for reporting serious disciplinary violations. 967 F.3d at 526. And in *Wenk, supra*, the Sixth Circuit determined that a reasonable official would understand that actions taken against a student in retaliation for speech violates the First Amendment rights, even if the underlying action is permissible if not taken for retaliatory purposes. 783 F.3d. at 600. *Cf Nailon*, 715 F.App'x at 517 (explaining that in light of cases "establishing that private citizens have a protected First Amendment right to criticize public officials… it should have been clear to a reasonable University official that retaliating against" an employee for protected speech would be unlawful."

**CONCLUSION**

The Motion should be denied.

Respectfully submitted,

    /s/ Joshua A. Engel    
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

19

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via the Court's electronic filing system this July 6, 2026 upon all counsel of record.

<u>/s/ Joshua Engel</u>
Joshua Engel