## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLA MARSHALL,** | : | **Case No. 1:26-cv-00267** |
| | : | |
| **Plaintiff,** | : | **Judge Douglas R. Cole** |
| | : | |
| **v.** | : | **Magistrate Judge Bowman** |
| | : | |
| **SHERRY DONAWORTH,** *et al.***,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### DEFENDANTS SHERRY DONAWORTH, KRISTA MADDOX, AND JOHN WEIDNER'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF MICHELLA MARSHALL'S COMPLAINT

Plaintiff's Opposition confirms that her First Amendment retaliation claim cannot survive dismissal. She seeks retrospective relief—vacating disciplinary findings and removing negative notations—rather than truly prospective relief aimed at an ongoing violation, so her official-capacity claims fall outside *Ex parte Young* and are barred by the Eleventh Amendment. She also cannot satisfy *Ex parte Young*'s second prong: the Complaint contains no facts showing that any named official has authority to vacate discipline or alter her records, or any "connection" that would allow an injunction against them to provide the requested relief.

Plaintiff's retaliation theory substantively fares no better. The Complaint itself ties the disciplinary process to Plaintiff's professionalism violations under the Student Code of Conduct and the American Nurses Association Code of Ethics and to her refusal to meet with faculty, not to DEI-related speech. Plaintiff does not plausibly allege that the Defendants took any adverse action against her because of protected speech, or that they even knew of that speech when charges were initiated and sanctions were imposed. Her effort to recast expulsion as an "excessive" penalty for "minor" misconduct relies on labels rather than facts: she pleads no comparator students,

procedural irregularities, or expressions of hostility toward her DEI advocacy that might support an inference of pretext or retaliatory motive.

Finally, Plaintiff's individual-capacity claims are barred by qualified immunity. Plaintiff defines the "clearly established" right at an impermissibly high level of generality—school officials may not retaliate against protected speech—without grappling with the specific context here: discipline in a professional nursing program based on emails found to violate professionalism and ethics standards. She identifies no Supreme Court or Sixth Circuit precedent that would have placed beyond debate the proposition that every reasonable official must treat such communications as protected and may not enforce professionalism policies against them. In this posture, qualified immunity should be resolved at the pleading stage, and the Court should dismiss all claims against the Defendants.

I.  **The Complaint Should Be Dismissed As To The Official Capacity Claim Against Weidner and Maddox Because the Court Lacks Subject Matter Jurisdiction Under the Eleventh Amendment.**

A. **Plaintiff's Requested Injunctive Relief Is Retrospective, and the Authorities She Relies Upon Confirm Rather Than Undermine Dismissal.**

Plaintiff attempts to invoke the narrow *Ex parte Young* exception by characterizing her requested relief as prospective. But the Court must look beyond the labels attached to the prayer for relief and examine "the substance of the legal claim, not its formal description." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). When viewed in substance, Plaintiff asks this Court to undo completed disciplinary decisions, not to halt an ongoing violation of federal law. Because the relief is retrospective, the Eleventh Amendment bars her official-capacity claims.

Plaintiff's prayer for relief seeks "[a] Permanent Injunction vacating any disciplinary findings, compelling Defendants to remove any negative notation from Marshall's disciplinary records, and prohibiting further disciplinary proceedings in a manner that violates the United States

2

Constitution." (ECF No. 9, PageID 69.) Each request must be evaluated separately, and each seeks relief directed solely at completed events.

First, Plaintiff's request to "vacat[e] any disciplinary findings" is plainly retrospective. She asks this Court to invalidate completed disciplinary determinations and erase the legal consequences of decisions already rendered. That is precisely the type of relief the Supreme Court has held falls outside *Ex parte Young*. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (The exception does not authorize federal courts to enter "judgments against state officers declaring that they violated federal law in the past."). Vacatur of completed disciplinary findings is retrospective by any measure. *Doe v. Wright State Univ.*, No. 3:16-cv-469, 2017 WL 3671240, at *6 (S.D. Ohio Aug. 24, 2017) ("Doe's request for an injunction vacating the discipline against him is retroactive in nature and, thus, also barred by the Eleventh Amendment.").

Second, Plaintiff's request to prohibit "further disciplinary proceedings" fares no better. The Complaint alleges only past disciplinary proceedings culminating in Plaintiff's dismissal. It identifies no pending investigation, no threatened disciplinary action, and no allegation that Weidner and Maddox continue to exercise disciplinary authority over Plaintiff. Because Plaintiff is no longer subject to the disciplinary process she challenges, there is no ongoing violation for this Court to enjoin. As this Court previously explained:

> Plaintiff is no longer enrolled ... and no discipline can be enforced by the Defendants against [him]; consequently, those portions of [the claim] seeking to prohibit Defendants from disciplining [him] are barred by the Eleventh Amendment.

*Doe v. Wright State Univ.*, 2017 WL 3671240, at \*6. Similarly, *Doe v. Bowling Green State University* held that *Ex parte Young* does not apply where "the alleged violative act itself is done and, as applied to [Plaintiff], will not recur," even though "the effects of these past alleged violations may be ongoing." No. 3:22-cv-140, 2022 WL 4599247, at \*6 (N.D. Ohio Sept. 30, 2022). That reasoning squarely applies here.

Finally, Plaintiff's request requiring Weidner and Maddox to "remove any negative notation" from her disciplinary records likewise does not save her official-capacity claims. Plaintiff principally relies on *Doe v. Cummins* and similar student-discipline cases, but those decisions arose in materially different factual circumstances. In *Cummins*, the Sixth Circuit concluded that preventing university officials from reporting disciplinary notations constituted prospective relief because the requested injunction governed the universities' future reporting obligations during an ongoing relationship with the plaintiffs. 662 F. App'x 437, 444 (6th Cir. 2016). The injunction did "not require the court to grant any retroactive or compensatory remedy," but instead regulated how university officials would report disciplinary information going forward. *Id*. In *Noakes v. University of Cincinnati*, the Sixth Circuit held that expungement was prospective where plaintiff alleged that his disciplinary record continued to affect him and he sought to regulate future reporting of that status. No. 24-3388, 2024 WL 4579453, at \*2 (6th Cir. Oct. 25, 2024). In *Doe v. University of Cincinnati*, the Court permitted an injunction preventing University officials from reporting disciplinary actions going forward because it "would not require the court to grant any retroactive or compensatory remedy." No. 1:16cv987, 2018 U.S. Dist. LEXIS 51833 (S.D. Ohio Mar. 28, 2018).

Likewise, *Doe v. Wright State University* carefully distinguished among three categories of requested relief. The court held that (1) an injunction prohibiting future discipline was barred

because the plaintiff was no longer enrolled and therefore no future discipline could occur; (2) an injunction vacating completed discipline was "retroactive in nature" and barred by the Eleventh Amendment; but (3) only the limited request preventing the university from reporting disciplinary expulsion through future disclosures of transcripts and student records qualified as prospective relief because it regulated the university's future conduct. 2017 WL 3671240, at *6.

That distinction is dispositive here. Plaintiff does not merely seek to regulate future reporting of her records. Plaintiff's request to "remove any negative notation" from Plaintiff's disciplinary record is materially different from the reporting-focused relief at issue in *Cummins*, *Noakes v. University of Cincinnati*, *Doe v. University of Cincinnati*, and *Wright State*. Those cases involved students seeking to regulate the future reporting of disciplinary actions in ongoing relationships with their universities, and the courts emphasized that the relief "would not require" vacatur of discipline or any retroactive remedy. Here, Plaintiff principally asks this Court to vacate completed disciplinary findings and erase the consequences of those completed proceedings. Her request to remove disciplinary notations is inseparable from that broader retrospective challenge because it serves only to nullify past disciplinary decisions. Plaintiff does not ask the Court to enjoin the University from reporting her dismissal to anyone. Plaintiff simply asserts that the discipline "will affect her ability to find professional employment." (ECF No. 9, ¶ 41, PageID 67.) That allegation describes a collateral consequence of past discipline, not an ongoing reporting practice. Plaintiff's Complaint challenges a completed disciplinary process and seeks judicial invalidation of its outcome.

Ultimately, Plaintiff's authorities reinforce rather than undermine dismissal. They consistently distinguish between injunctions regulating future state conduct and injunctions invalidating completed state action. Plaintiff seeks the latter. Because the substance of her

requested relief is to overturn completed disciplinary findings and erase their consequences, her official-capacity claims fall outside the narrow *Ex parte Young* exception and are barred by the Eleventh Amendment.

### B. Plaintiff Fails The Second Prong Of *Ex parte Young* Because She Has Not Plausibly Alleged That Maddox Or Weidner Can Provide The Requested Injunctive Relief.

Even if Plaintiff could satisfy *Ex parte Young*'s first prong—which she cannot—her First Amendment retaliation claim against Maddox and Weidner in their official capacities also fails under the second prong. To invoke the *Ex parte Young* exception, a plaintiff must identify a state official who has both a sufficient connection to the alleged ongoing violation and the authority to provide the specific prospective relief sought. *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013); *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2020 WL 5361669, at *7 (S.D. Ohio Sept. 8, 2020).

In her Opposition, Plaintiff mischaracterizes Defendants' argument as imposing an individualized-liability standard applicable to damages claims. Defendants make no such argument. Defendants instead argue that Plaintiff failed to plausibly allege facts that would allow the Court to reasonably infer that Maddox or Weidner have the authority to provide the relief she seeks. (ECF No. 10, PageID 79-80.)

Unable to make that showing, Plaintiff repeatedly substitutes generalized "responsibility" for the governing standard. She argues that Maddox and Weidner are responsible for implementing University policies concerning student conduct and academic affairs and therefore have a connection to the alleged constitutional violation.

But Plaintiff does not allege that Maddox is responsible for implementing any University policies and procedures. Instead, Plaintiff only alleges, in conclusory form, that Maddox "has the authority to provide all of the injunctive relief sought." (ECF No. 9, ¶ 5(b), PageID 57.)

6

Plaintiff's bare allegation that Weidner is responsible "for implementing the various policies and procedures UC has adopted related to student conduct and academic affairs" (ECF No. 9, ¶ 6(c), PageID 57) does not sufficiently identify what decision-making authority Weidner has to vacate disciplinary findings or remove negative notations from Plaintiff's disciplinary records. Plaintiff does not identify any facts, statute, regulation, specific University policy, or delegation of authority establishing that Weidner (or Maddox) may vacate disciplinary findings, expunge disciplinary records, alter educational records, or otherwise provide the relief requested. Conclusory assertions of "responsibility" cannot satisfy *Ex parte Young*.

Plaintiff's reliance on *Noakes v. University of Cincinnati*[1] does not cure the deficiencies in her Complaint. *Noakes* does not hold that a plaintiff may satisfy *Ex parte Young* by merely naming University officials and alleging that they have general responsibility for implementing "various policies and procedures" related to student affairs. Rather, the *Noakes* plaintiff identified University officials responsible for administering the specific Title IX and student conduct procedures that resulted in the challenged disciplinary outcome and sought relief directed at those officials' authority to alter the resulting disciplinary records. 2024 WL 4579453, at *3.

Here, Plaintiff's allegation that Weidner is responsible for implementing "various policies and procedures" related to "student conduct and academic affairs" (ECF No. 9, 6(c), PageID 57)

---

[1] *Doe v. N. Mich. Univ.*, 393 F. Supp. 3d 683 (W.D. Mich. 2019) and *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704 (S.D. Ohio 2016) do not bear on this analysis. Neither decision undertook the *Ex parte Young* "connection" analysis at issue here. Those cases involved challenges to specific Title IX policies, procedures, and disciplinary processes, but they did not address whether the named officials possessed the requisite authority to provide the particular injunctive relief sought under the second prong of *Ex parte Young*. Thus, those cases do not support Plaintiff's assertion that a general allegation of responsibility for university policies is sufficient to establish that a defendant has the authority necessary to invoke the *Ex parte Young* exception.

fails to identify any specific policy, procedure, or source of authority connecting Weidner to the disciplinary findings Plaintiff seeks to overturn.

Because Plaintiff has failed to allege facts demonstrating that Maddox or Weidner has the authority to implement the specific injunctive relief requested,[2] she has not satisfied the second requirement of *Ex parte Young*. Her official-capacity claims therefore remain barred by the Eleventh Amendment and should be dismissed.

## II. Count I Must Be Dismissed Because Plaintiff Failed To State A Claim Upon Which Relief Can Be Granted.

### A. The Complaint Ties Plaintiff's Discipline To Professionalism Violations, Not DEI Speech.

Plaintiff attempts to characterize this case as one involving retaliation for her complaints concerning the University's elimination of DEI programs. But the allegations in her Complaint identify a different category of speech as the basis for the misconduct proceedings: her repeated emails to Nursing Program faculty and staff concerning grading and course administration. Those

---

[2] Plaintiff's suggestion that the Court should defer ruling until discovery based on *Reeves v. Shawnee State University*, No. 1:16-CV-00765, 2017 WL 888603, at *4 (S.D. Ohio Mar. 2, 2017) is unavailing. *Reeves* did not establish a rule that discovery is warranted whenever a plaintiff fails to plead that the named officials possess the authority required under *Ex parte Young*. Rather, the court exercised its discretion to deny the motion to dismiss on the particular allegations before it and permitted limited discovery regarding the proper official. Nothing in *Reeves* suggests that Rule 12(b)(6)'s pleading standards are suspended until after discovery or that a plaintiff may proceed based on speculation that discovery might uncover a different official with the requisite authority. That is particularly true here. Defendants do not argue merely that Plaintiff named the wrong university official. Defendants argue that the Amended Complaint fails to plead facts establishing that any of the named Defendants possess the authority required under *Ex parte Young* or otherwise engaged in the conduct necessary to state Plaintiff's constitutional claims. Plaintiff cannot overcome those pleading deficiencies by suggesting that discovery may reveal a different official who should have been sued. Rule 8 requires Plaintiff to plausibly allege a viable claim before she is entitled to discovery, not use discovery to determine whether she has sued the proper defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

allegations—not her separate DEI-related complaints—form the factual basis for the academic misconduct proceedings initiated against her.

Plaintiff cannot satisfy the first element of a retaliation claim simply by identifying other speech that she made at some point during her enrollment. The relevant inquiry is whether the speech underlying the challenged action is constitutionally protected. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024). Here, Plaintiff's own allegations establish that the University was addressing communications made in the context of a professional nursing program, directed toward faculty and staff regarding course administration, and found to violate applicable professionalism standards. (ECF No. 9, ¶¶ 26-27, PageID 64, 65.)

Nor does Plaintiff's reference to DEI-related complaints change this analysis. Plaintiff alleges that she expressed concerns regarding DEI to a student success coordinator, academic advisor, administrator, and staff. (*Id*. at ¶ 24, PageID 63). But those allegations do not alter the nature of the conduct for which Plaintiff alleges she was disciplined. The Complaint distinguishes between her DEI-related comments and the emails that prompted the University's professionalism concerns. Thus, Plaintiff's own pleading fails to identify protected speech that serves as the basis for the alleged retaliation.

### B. Plaintiff Fails to Allege That Any Defendant Took an Adverse Action Against Her Based On Alleged Protected Speech.

Plaintiff does not meaningfully respond to Defendants' argument that the Complaint fails to plausibly allege that any Defendant took an adverse action against her. Instead, Plaintiff points to the fact that she was ultimately expelled from the Nursing Program and argues that expulsion necessarily constitutes an adverse action under *Diei v. Boyd*, 116 F.4th 637 (6th Cir. 2024). But Plaintiff conflates the existence of an adverse action with the identification of a Defendant who allegedly took that action. Although an expulsion may constitute an adverse action, Plaintiff must

still plausibly allege that each Defendant engaged in conduct that either constituted an adverse action or directly caused the alleged adverse action. The Complaint does not identify any Defendant who caused Plaintiff's expulsion, and therefore fails to state a claim against the named Defendants. *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 585 (6th Cir. 2008) (to state a claim for First Amendment retaliation, a party must allege that "the defendant's adverse action *caused* the plaintiff to suffer an injury") (emphasis added).

Plaintiff's reliance on the allegation that Maddox was "responsible for the operation of the Panel and ensuring that it complied with applicable rules" (ECF No. 9, ¶ 38, PageID 66) is insufficient to establish adverse action by Maddox. That allegation establishes, at most, that Maddox had an administrative role in the disciplinary process. Plaintiff does not (and cannot) allege that Maddox decided to pursue Plaintiff's dismissal, voted to expel her, selected expulsion as the appropriate sanction, or otherwise exercised authority over the ultimate disciplinary outcome. Under Ohio Adm. Code §§ 3361:40-5-05(B)(2)(a)-(b) and 3361:40-5-05(B)(4), Maddox, who served as the University's College Conduct Administrator, lacks authority to participate in the disciplinary process in this manner.

Plaintiff's allegations against Donaworth likewise fail to establish that she took adverse action against Plaintiff for purposes of a First Amendment retaliation claim. Plaintiff relies on the assertion that Donaworth initiated the misconduct charges and sent a Resolution Form (ECF No. 9, ¶ 28, 30 PageID 65), but those allegations establish, at most, that Donaworth raised professionalism concerns and referred the matter into the University's established disciplinary process. That is insufficient to establish that Donaworth caused an adverse action. *See, e.g., Thompson v. Ohio State Univ.*, 92 F. Supp. 3d 719, 735 (S.D. Ohio 2015), *aff'd*, 639 F. App'x 333 (6th Cir. 2016) ("it is entirely unclear whether a referral to a neutral investigative

10

body could violate a constitutional right"). The Complaint does not allege that Donaworth herself decided to seek Plaintiff's dismissal, voted to expel her, selected expulsion as the appropriate sanction, or otherwise exercised authority over the ultimate disciplinary outcome.

The allegations against Weidner are even more deficient. Plaintiff concedes that there was "no adverse action by [Weidner]" (ECF No. 11, PageID 106), but argues that this is immaterial because he is sued only in his official capacity for injunctive relief. That argument fails. A plaintiff cannot avoid the pleading requirements of a First Amendment retaliation claim by labeling a defendant as an official-capacity defendant. An official-capacity claim is not a vehicle for imposing liability based solely on an individual's employment relationship with the institution; it is effectively a claim against the governmental entity itself and must be tied to conduct, authority, or action attributable to that entity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

*Diei v. Boyd* does not hold otherwise. There, the Sixth Circuit considered whether a university's investigation and expulsion process could constitute an adverse action and concluded that it could because the challenged conduct was directly tied to the defendants' disciplinary decision-making. *Diei v. Boyd*, 116 F.4th 637 (6th Cir. 2024). The defendants in *Diei* investigated the plaintiff's conduct, voted on the outcome, and imposed consequences that directly affected the plaintiff's academic status. *Id*. at 648. The court did not hold that every individual who participates in the administration of a disciplinary process has taken an adverse action. Rather, the relevant inquiry remains whether the defendant's own conduct caused the alleged injury. *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023). Here, Plaintiff does not allege that Weidner, Maddox, or Donaworth imposed the sanction she challenges.

11

Even if the Court were to consider conduct attributed to Weidner, Maddox, or Donaworth, Plaintiff still fails to allege that their conduct constitutes an adverse action under the First Amendment retaliation standard. The conduct Plaintiff attributes to Weidner, Maddox, and Donaworth consists only of administrative participation in a disciplinary process: reporting academic misconduct, ensuring compliance with procedures, and communicating the outcome reached by the decisionmakers. Plaintiff does not allege that Weidner, Maddox, or Donaworth used his or her authority to impose a penalty designed to deter protected expression.

Plaintiff's reliance on *Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014), and *Diei* is misplaced for the same reason. Those cases involved affirmative actions that directly affected the plaintiffs' academic opportunities—the threatened withholding of a transcript in *Benison* and expulsion decisions resulting in dismissal in *Diei*. Here, the allegations against Weidner, Maddox, and Donaworth are limited to administrative involvement in a process whose outcome was determined by others. Plaintiff cannot convert every administrative step in a disciplinary proceeding into an adverse action simply because the proceeding ultimately resulted in discipline.

Accordingly, Plaintiff has not plausibly alleged that any Defendant took an adverse action sufficient to support her First Amendment retaliation claim.

### C. Plaintiff Fails to Plausibly Allege a Causal Connection Between Her DEI-Related Speech and the Disciplinary Action.

Even assuming Plaintiff has adequately alleged protected speech, her retaliation claim still fails because the Complaint does not plausibly allege that Defendants acted because of that speech. Plaintiff's Opposition attempts to recast the disciplinary proceedings as retaliation for her complaints regarding DEI, but the allegations in her own Complaint identify an independent reason for the University's actions: professionalism concerns arising from Plaintiff's communications with Nursing Program faculty and staff. (ECF No. 9, ¶¶ 26-27, PageID 64, 65.) According to

12

Plaintiff's own allegations, the professionalism concerns led to the initiation of academic misconduct proceedings. (*Id*. at ¶ 30, PageID 65.) Nothing in those allegations suggests that the disciplinary proceedings were initiated because of Plaintiff's DEI-related speech.

Plaintiff attempts to bridge this gap by pointing to various DEI-related communications, including emails to a student success coordinator and academic advisor, conversations with an embedded counselor, and a complaint to the Office of Equal Opportunity regarding the University's rollback of DEI programs and the AACRC name change. But those allegations do not plausibly establish that the relevant decisionmakers knew of, or acted because of, that speech.

To the contrary, the Complaint alleges that Plaintiff first raised her DEI-related concerns directly to members of the disciplinary process during the December 12, 2025 hearing—after the misconduct proceedings had already begun. (ECF No. 9, ¶¶ 38(d) and (e), PageID 67.) The fact that Plaintiff expressed protected views somewhere within the University does not establish a causal connection between those views and the later disciplinary action. A retaliation claim requires allegations that the decisionmakers were aware of the protected activity and that the adverse action was taken because of that activity. *See Allen v. Iranon,* 283 F.3d 1070, 1076 (9th Cir. 2002) (finding in First Amendment retaliation case that "[i]n order to retaliate against an employee for his speech, an employer must be aware of that speech."); *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (protected speech must be a substantial or motivating factor in the adverse action, and a motivating factor is essentially but-for causation). Plaintiff has not plead facts satisfying those requirements.

Plaintiff argues that the University's professionalism rationale was merely a pretext for punishing her DEI-related speech. But the Complaint contains no factual allegations supporting that inference. Plaintiff does not allege that the University's stated concerns about her emails were

fabricated, that the decisionmakers expressed hostility toward her DEI views, that similarly situated students were treated differently, or that the University departed from its ordinary disciplinary procedures.

Instead, Plaintiff relies primarily on the assertion that expulsion was an excessive response to what she characterizes as "minor" misconduct. But disagreement with the severity of discipline does not plausibly establish retaliatory motive.[3] Here, Plaintiff provides no factual basis from which the Court could infer that the sanction was selected because of her DEI-related speech rather than because of the professionalism concerns identified throughout the disciplinary process. Plaintiff's own allegations establish that the University identified professionalism concerns, determined that her communications violated applicable standards, and initiated proceedings based on those concerns. Without allegations tying the severity or outcome of the discipline to Plaintiff's

---

[3] Plaintiff's reliance on *Stalter*, *Stockdale*, *Moore*, *Harrison*, and *Parries* does not alter this conclusion. Those cases stand for the proposition that, in an evidentiary record, a grossly disproportionate penalty or heightened scrutiny can be one factor among many supporting an inference of improper motive for a variety of claims. In *Stalter*, for example, the Seventh Circuit described termination for what appears to be minor misconduct as "swatting a fly with a sledge hammer" only after reviewing a developed record in which the employer's stated justification was undermined by other evidence. *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290 (7th Cir. 1999). Likewise, *Stockdale*, *Moore*, and *Harrison* involved employment settings where "excessive scrutiny" or "excessive disciplinary actions" were evaluated alongside detailed proof of animus, procedural irregularities, and comparative treatment. *Stockdale v. City of Gallatin*, No. 3:19-cv-00684, 2021 WL 6752282, at *14 (M.D. Tenn. Feb. 8, 2021); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999); *Harrison v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 80 F.3d 1107, 1119 (6th Cir. 1996). And *Parries* turned on a jury's assessment of trial evidence that the dismissal "was unjustified in terms of the relatively minor nature of the alleged misconduct it revealed." *Parries v. Makino, Inc.*, 148 F. App'x 291, 302 (6th Cir. 2005). Here, by contrast, Plaintiff offers only bare characterizations—that her misconduct was "minor" and the penalty "excessive"—without factual allegations about applicable sanction ranges, usual practice in comparable cases, or departures from established procedures. In the absence of factual allegations showing differential treatment, hostility to her DEI speech, or procedural anomalies comparable to those in *Stalter*, *Stockdale*, *Moore*, *Harrison*, or *Parries*, her "excessive penalty" assertion is just a label. It cannot, standing alone, plausibly support an inference that the University's disciplinary decision was retaliatory rather than rooted in its articulated academic and professional standards.

14

protected speech, the assertion that the punishment was "excessive" is insufficient to establish causation.

### D.  Donaworth and Maddox Are Entitled To Qualified Immunity.

#### i.  Plaintiff Misdefines The "Clearly Established" Right At Too High A Level Of Generality.

Plaintiff's qualified-immunity argument fails because it defines the asserted right at the highest level of abstraction.[4] Plaintiff contends that the clearly established right is simply that "school officials may not discipline a student for the purpose of retaliating against the student's protected speech." (ECF No. 11, PageID 109.) But that formulation merely restates the First Amendment retaliation claim itself. The clearly established inquiry requires a much more specific analysis: whether existing precedent placed beyond debate that officials in this particular context would violate the Constitution by taking the challenged action. *Zorn v. Linton*, 146 S.Ct. 926, 930 (2026).

The Supreme Court has repeatedly cautioned that qualified immunity cannot be defeated by defining the right at a broad level of generality. Rather, the inquiry must be undertaken "in light of the specific context of the case," and the question is whether existing precedent places the constitutional issue "beyond debate." *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018).

The relevant question here is not simply whether university officials may retaliate against student speech. The question is whether reasonable officials at a professional nursing program would have understood that disciplining a student based on repeated communications with faculty regarding grading and course administration—which the University determined violated the Student Code of Conduct and the American Nurses Association Code of Ethics—violated clearly

---

[4] And because Plaintiff has failed to establish that any Defendant violated any such right.

established law. Plaintiff identifies no Supreme Court or Sixth Circuit authority holding that officials violate the First Amendment by applying professional-conduct standards to student communications made in connection with a professional program's academic activities.

### ii. Qualified Immunity Is Properly Resolved At The Pleading Stage.

Plaintiff's request to defer qualified immunity until summary judgment is likewise misplaced. Although courts may defer qualified immunity when factual development is necessary, that does not prevent dismissal at the pleading stage where the allegations themselves fail to demonstrate a violation of clearly established law. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Qualified immunity is an immunity from suit, not merely a defense to liability, and courts are instructed to resolve the issue at the earliest possible stage where appropriate. *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (abrogated on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Because Plaintiff has not identified clearly established law requiring a different result under these circumstances, Donaworth and Maddox are entitled to qualified immunity, and Plaintiff's claims against them should be dismissed.

### CONCLUSION

For the reasons set forth above, and in Defendants' Motion to Dismiss, the Defendants respectfully request that the Court dismiss the Complaint in its entirety.

16

Respectfully submitted,

/s/ Jada M. Colon
Philip D. Williamson (0097174)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
301 East Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Fax: (513) 381-0205
pwilliamson@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

17

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

*/s/ Jada M. Colon*