## *Doe v. Univ. of Cincinnati*

United States District Court for the Southern District of Ohio, Western Division

March 28, 2018, Filed

Case No. 1:16cv987

**Reporter**

2018 U.S. Dist. LEXIS 51833 *; 2018 WL 1521631

John Doe, Plaintiff, v. University of Cincinnati, et al., Defendants.

**Prior History:** *Doe v. Univ. of Cincinnati, 872 F.3d 393, 2017 U.S. App. LEXIS 18458 (6th Cir.), 2017 FED App. 224P (6th Cir.) (6th Cir. Ohio, Sept. 25, 2017)*

**Counsel:  [*1]** For John Doe, Plaintiff: Anne L Tamashasky, Joshua A Engel, LEAD ATTORNEYS, Engel & Martin, LLC, Mason, OH.

For University Of Cincinnati, Director, Office of University Judicial Affairs, Assistant Vice President for Student Affairs, Defendants: Rosemary Doreen Canton, LEAD ATTORNEY, Taft, Stettinius & Hollister - 1, Cincinnati, OH; Evan T Priestle, Taft Stettinius & Hollister, LLP, Cincinnati, OH.

**Judges:** JUDGE MICHAEL R. BARRETT.

**Opinion by:** MICHAEL R. BARRETT

## Opinion

**OPINION & ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 30). Plaintiff filed a Response (Doc. 31) and Defendants filed a Reply (Doc. 32).

Also before the Court is Plaintiff's Motion for Expedited Discovery. (Doc.4). The materials requested by Plaintiff were provided in anticipation of the hearing on Plaintiff's Motion for Preliminary Injunction. (See Doc. 16). Therefore, Plaintiff's Motion for Expedited Discovery is DENIED as MOOT.

### I. BACKGROUND

Plaintiff John Doe was accused of sexual assault by Jane Roe. Both were students at the University of Cincinnati at the time. After a disciplinary hearing, Defendants University of Cincinnati ("UC"), Aniesha Mitchell, Director of the Office of Student **[*2]**  Conduct and Community Standards, and Juan Guardia, Assistant Vice President for Student Affairs and Dean of Students, imposed disciplinary sanctions on Plaintiff.

A full recitation of the facts is set forth elsewhere (Doc. 20), and the Court finds it unnecessary to repeat the same here.

On November 30, 2016, this Court granted Plaintiff's Motion for Preliminary Injunction and enjoined Defendants from imposing the one-year suspension on Plaintiff. While Plaintiff brought a number of claims, Plaintiff's Motion for Preliminary Injunction was focused on Defendants' failure to permit Plaintiff to confront his accuser. Defendants appealed the granting of the injunction. (Doc. 22). While the appeal was pending, Plaintiff filed his Amended

2018 U.S. Dist. LEXIS 51833, *2

Complaint (Doc. 24); and Defendants filed their Motion to Dismiss (Doc. 30). On September 25, 2017, the Sixth Circuit affirmed this Court's grant of the Preliminary Injunction. *John Doe v. University of Cincinnati, 872 F.3d 393 (6th Cir. 2017)*. A number of arguments made by the parties are no longer valid based upon the Sixth Circuit's ruling in this case and in other cases decided by the Sixth Circuit after the briefing on the Motion to Dismiss was completed.

## II. ANALYSIS

### A. Motion to Dismiss Standard

When reviewing a *12(b)(6)* **[*3]** motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008)* (quoting *Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007))*. "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

### B. *Eleventh Amendment*

Defendants argue that Plaintiff's due process claims in Counts I and II are barred by the *Eleventh Amendment*. Count I seeks a declaratory judgment "that the UC Code of Conduct, as applied to John Doe, violates the *Due Process Clause of the United States Constitution*, the *Due Course of Law Clause of the Ohio Constitution*, and the requirement of the OAC that any hearing process be consistent with the customs of a free society." Count II is a claim brought under *42 U.S.C. § 1983* against Aniesha Mitchell and Juan Guardia ("the Individual Defendants") in their official capacities for injunctive relief "prohibiting the imposition of, or **[*4]** reporting of, any disciplinary actions under the UC Code of Student Conduct."

*Eleventh Amendment* immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012)* (quoting *Thiokol Corp. v. Dep't of Treasury, 987 F.2d 376, 381 (6th Cir. 1993))*. However, the *Eleventh Amendment* does not preclude a suit against the Individual Defendants for prospective injunctive relief. *See id. at 662* (citing *McKay v. Thompson, 226 F.3d 752, 757 (6th Cir. 2000))*.

The Sixth Circuit has held that a request that individual defendants sued in their official capacity be enjoined from reporting any disciplinary actions taken by the university would not require the court to grant any retroactive or compensatory remedy. *Doe v. Cummins, 662 F. App'x 437, 444 (6th Cir. 2016)*. "Rather, the individual defendants would merely be compelled to remove the negative notation from [the plaintiffs'] disciplinary records that resulted from the allegedly unconstitutional disciplinary process." *Id.* The Sixth Circuit also held that the plaintiffs' request for a declaratory judgment that the individual defendants violated their constitutional rights in the past was not barred by the *Eleventh Amendment* because it is ancillary to a prospective injunction designed to remedy a continuing violation of federal law. *Id.*

Therefore, to the extent that Plaintiff's **[*5]** requested relief seeks an injunction prohibiting further enforcement of the disciplinary sanction against him or seeks declaratory relief regarding past constitutional violations, Plaintiff's claims against the Individual Defendants are not barred by the *Eleventh Amendment*.

2018 U.S. Dist. LEXIS 51833, *5

**C. *Section 1983***

Plaintiff has brought claims pursuant to *42 U.S.C. § 1983* based on violations of his procedural due process.

"To prevail on a *§ 1983* claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton, 681 F.3d 853, 859-860 (6th Cir. 2012)* (quoting *Waters v. City of Morristown, Tenn., 242 F.3d 353, 358-59 (6th Cir. 2001)*. Plaintiff has identified two violations of the *Fourteenth Amendment* right to due process: (1) Defendants did not afford him an opportunity to cross examine Jane Roe; and (2) Defendants deprived him of an impartial decision maker.[1]

The *Fourteenth Amendment* provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the *Due Process Clause*; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Cir. 2014)* (citing *Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006))*. The Sixth Circuit has found that suspension resulting **[*6]** from a higher education disciplinary decision "clearly implicates" a protected property interest, and allegations of sexual assault may "impugn [a student's] reputation and integrity, thus implicating a protected liberty interest." *Doe v. Univ. of Cincinnati, 872 F.3d 393, 399 (6th Cir. 2017)* (quoting *Doe v. Cummins, 662 Fed. Appx. at 445*).

As part of the appeal in this case, the Sixth Circuit determined: where the credibility of an alleged victim is at issue, the university must provide a way for the adjudicative body to evaluate the victim's credibility and "to assess the demeanor of both the accused and his accuser." *Doe v. Univ. of Cincinnati, 872 F.3d at 406*. Therefore, Plaintiff has stated a due process claim based on Defendants' failure to provide him with such an opportunity.

Plaintiff also claims that he was deprived of an impartial decisionmaker. The Sixth Circuit recently reiterated that "school officials responsible for deciding whether to exclude a student from school must be impartial." *Doe v. Miami Univ., 882 F.3d 579, 601 (6th Cir. 2018)* (quoting *Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 567 (6th Cir. 2011))*. However, "[i]t is also well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Doe v. Miami Univ., 655 F.3d at 601* (quoting *Cummins, 662 Fed.Appx. at 449*). "Any alleged prejudice on the part of the [decisionmaker] must be evident from the record and cannot be based in speculation or inference." *Doe v. Cummins, 662 F. App'x at 450* (quoting **[*7]** *Nash v. Auburn Univ., 812 F.2d 655, 665 (11th Cir. 1987))*.

Plaintiff alleges bias based on UC's adoption of a "victim-centered approach" to investigations of sexual assault on campus. Plaintiff explains that under this approach, UC would support the rights of alleged victims over the rights of an accused student. In support of his claim, Plaintiff points to the training provided to members of the disciplinary hearing panel. This Court has already determined that "victim-centered" training materials alone do not establish bias. *Doe v. Ohio State Univ., No. 2:15-CV-2830, 2016 U.S. Dist. LEXIS 21064, 2016 WL 692547, at *10 (S.D. Ohio Feb. 22, 2016)*, report and recommendation adopted, *No. 2:15-CV-2830, 2016 U.S. Dist. LEXIS 52942, 2016 WL 1578750 (S.D. Ohio Apr. 20, 2016)*.[2]

To the extent Plaintiff relies on pressure from the federal Department of Education or the now-rescinded "Dear Colleague Letter" from the Office of Civil Rights ("OCR"), generalized allegations of institutional pressure also do not show actual bias. *Doe v. Miami Univ., 882 F.3d at 601*. This Court has recently found plausible allegations of bias based on the fact the OCR opened a Title IX investigation into whether UC "discriminated against students

---

[1] Plaintiff also claimed that Defendants violated his procedural due process by applying an improper burden of proof and not permitting him to have counsel at the disciplinary hearing. However, Plaintiff has forfeited those claims.

[2] Moreover, it is not entirely clear that the training materials referenced by Plaintiff were the materials used to train the disciplinary panel in this case. (See Doc. 32, PAGEID #481-82).

based on sex" by failing to equitably respond to reports of sexual violence. *Gischel v. Univ. of Cincinnati, No. 1:17-CV-475, 302 F. Supp. 3d 961, 2018 U.S. Dist. LEXIS 18083, 2018 WL 705886, at *9 (S.D. Ohio Feb. 5, 2018)*. This Court explained that the disciplinary hearing was held in March 2016 after UC received written **[*8]** notice about the OCR investigation in February of 2016. *Id.* This Court noted that there was an email in the investigative file which noted that the incident was a part of the OCR investigation. *Id.* While Plaintiff's hearing was also held after the OCR initiated its investigation of UC, Plaintiff has not alleged any connection between the Title IX investigation and his hearing.

Finally, Plaintiff points to UC's former Title IX administrator who worked for an organization that promotes victim-centered approaches by schools. As the Sixth Circuit has explained: "merely being a feminist or researching topics that affect women does not support a reasonable inference that a person is biased." *Doe v. Miami Univ., 882 F.3d at 601*; *see also Doe v. Univ. of Cincinnati, 173 F. Supp. 3d at 601-602* (citing *Gomes v. University of Maine Sys., 365 F.Supp.2d 6, 31-32 (D.Me. 2005)* (explaining the fact that the hearing board chair participated in sexual assault victim advocacy programs did not demonstrate that she was biased against the plaintiff in his sexual misconduct disciplinary hearing)).

Therefore, Plaintiff has failed to state a claim for a violation of his procedural due process based on Defendants' alleged bias. To the extent that Defendants' Motion to Dismiss is directed to Plaintiff's procedural due process claim based on bias, the Motion is GRANTED. **[*9]** To the extent that Defendant's Motion to Dismiss is directed to Plaintiff's procedural due process claim based on Defendants' failure to provide him with an opportunity to cross-examine Jane Roe, the Motion is DENIED.

## D. **Title IX**

*Title IX of the Education Amendments of 1972* provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *20 U.S.C. § 1681(a)*.

The Sixth Circuit has recognized "at least four theories of liability that a student who is 'attacking a university disciplinary proceeding on grounds of gender bias' ... can potentially assert under Title IX. These theories include: (1) 'erroneous outcome,' (2) 'selective enforcement,' (3) 'deliberate indifference,' and (4) 'archaic assumptions.'" *Doe v. Miami Univ., 882 F.3d at 589*. Plaintiff is proceeding on the erroneous outcome theory.

"In a typical erroneous outcome case, the plaintiff 'attack[s the] university disciplinary proceeding on grounds of gender bias" by arguing that the plaintiff "was innocent and wrongly found to have committed an offense.'" *Sahm v. Miami Univ., 110 F. Supp. 3d 774, 777-78 (S.D. Ohio 2015)* (quoting *Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994))*. "[T]o state an erroneous-outcome claim, a plaintiff must plead: (1) 'facts **[*10]** sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *Doe v. Cummins, 662 Fed Appx. at 451* (quoting *Yusuf, 35 F.3d at 715*).

Plaintiff has pleaded sufficient facts to cast "some articulable doubt on the accuracy of the disciplinary proceeding." As the Sixth Circuit explained when this case was on appeal: "Allowing John Doe to confront and question Jane Roe through the panel would have undoubtedly aided the truth-seeking process and reduced the likelihood of an erroneous deprivation." *872 F.3d at 404*.

However, Plaintiff must also allege facts showing a causal connection. "Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. Miami Univ., 882 F.3d at 593* (quoting *Yusuf, 35 F.3d at 715*). Alleged procedural deficiencies, without alleging additional facts linking the procedural defects to gender bias, do not create a plausible inference of gender discrimination under Title IX. *Doe v. Cummins, 662 Fed Appx. at 452* ("Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and

erroneous outcome combined with **[*11]** a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss.").

Plaintiff relies on the Second Circuit's decision in *Doe v. Columbia University, 831 F.3d 46 (2016)* to argue that allegations of substantial criticism of a university in the media and by the student body can establish a causal connection under Title IX. However, in *Doe v. Miami University*, the Sixth Circuit explained that in *Columbia University*, the Second Circuit analogized Title IX claims to Title VII employment-discrimination cases and concluded that a complaint under Title IX "is sufficient with respect to the element of discriminatory intent ... if it pleads specific facts that support a minimal plausible inference of such discrimination." *882 F.3d at 588* (quoting *Columbia Univ., 831 F.3d at 56*). The Sixth Circuit explained that this modified pleading standard "reduces the facts needed to be pleaded under *Iqbal*." *Id.* The Sixth Circuit concluded: "Whatever the merits of the Second Circuit's decision in *Columbia University*, to the extent that the decision reduces the pleading standard in Title IX claims, it is contrary to our binding precedent." *Doe v. Miami Univ., 882 F.3d at 589*. Therefore, the Court is hesitant to place any reliance on the Second Circuit's decision in *Columbia University*.

When the Sixth **[*12]** Circuit turned to its analysis of the pleadings in *Doe v. Miami University*, the Sixth Circuit found that "the statistical evidence that ostensibly shows a pattern of gender-based decision-making and the external pressure on Miami University supports at the motion-to-dismiss stage a reasonable inference of gender discrimination." *Id. at 593*.

Plaintiff has not presented the same statistical evidence in this case to show a pattern of gender-based decision-making.[3] Instead, Plaintiff relies solely on the external pressures UC was facing at the time of his disciplinary hearing. These same allegations of external pressures on UC were presented to this Court in another case brought against UC. *Gischel v. Univ. of Cincinnati, No. 1:17-CV-475, 302 F. Supp. 3d 961, 2018 U.S. Dist. LEXIS 18083, 2018 WL 705886, at *4 (S.D. Ohio Feb. 5, 2018)*. In *Gischel*, this Court cited several cases which have held that conclusory allegations that the university was concerned about the loss of federal funds are not sufficient evidence to state a plausible claim of gender bias. *2018 U.S. Dist. LEXIS 18083, [WL] at *8*. While this Court ultimately found a causal connection, it was based on the pending OCR investigation of UC for Title IX violations and the potential gender-based animus of the UC Police detective investigating the incident, who had an alleged **[*13]** romantic interest in the plaintiff's accuser. *2018 U.S. Dist. LEXIS 18083, [WL] at *9*.

Plaintiff argues that the same OCR investigation of UC is sufficient to establish a causal connection in this case. However, in *Gischel*, the plaintiff's accuser had initiated the OCR complaint herself, and as explained above, there was an email in the investigative file which noted that the incident was a part of the OCR investigation. *2018 U.S. Dist. LEXIS 18083, 2018 WL 705886, at *9*. Here, Plaintiff has not alleged that anyone involved in the investigation or the disciplinary hearing was aware of the OCR investigation of UC. Instead, Plaintiff relies solely on the timing of events: UC was aware of the claims by Jane Roe on October 30, 2016, but did not inform John Doe about possible charges until February 19, 2016 — approximately ten days after receiving notice of the OCR investigation. The Court finds this allegation insufficient to infer gender bias.

In terms of public pressure, Plaintiff has cited a 2014 *Cincinnati Enquirer* article which mentions UC and discusses the pressure on universities from the Department of Education and others to crack down on campus sexual assaults; a 2016 *Cincinnati Enquirer* editorial which was critical of the handling of sexual assault on university campuses; **[*14]** and a task force which was formed to reduce campus gender-based violence in the City of Cincinnati. (Doc. 24, ¶ 17). Plaintiff also cites a November 2015 walk on the UC campus organized by students to combat the so-called "rape culture" at UC and demand changes in how UC responded to complaints of female

---

[3] The allegations included statistics showing that every male student at Miami University accused of sexual misconduct in the Fall 2013 and Spring 2014 semesters was found responsible for the alleged violation, and that nearly ninety percent of students found responsible for sexual misconduct between 2011 and 2014 have male first-names. These statistics were supported by an affidavit from an attorney who represents many students in Miami University's disciplinary proceedings. In addition, the plaintiff pointed out that the university initiated an investigation into him but not his accuser, even though he was inebriated to the extent that he could not consent under Miami University's policies.

students alleging sexual assault by male students. (Id.) Plaintiff also explains that a student group, Students for Survivors, was formed in August of 2015 to encourage UC to "believe" the stores of alleged victims of sexual assault, regardless of the results of any investigation or hearing. (Id., ¶ 18). However, the Court notes that most of the public advocacy work done by Student for Survivors took place after Plaintiff's disciplinary hearing in June of 2016.

The Court concludes that these allegations do not show that the public pressure was focused on Plaintiff's disciplinary proceedings, as opposed to UC's handling of sexual assault on campus more generally. In the cases where public pressure was found to support claims of erroneous outcome, that public pressure targeted the specific disciplinary action being challenged. *See, e.g.*, *Doe v. Amherst Coll., 238 F. Supp. 3d 195, 2017 WL 776410, at *17 (D. Mass. 2017)* (allegations **[*15]** support claim of erroneous outcome where student who filed complaint accusing plaintiff of sexual misconduct was involved in student-led movement to compel the college to change the way it handled sexual assault allegations; the college was aware of her involvement in the movement; and the college was actively trying to appease the student-led movement); *Doe v. Lynn Univ., Inc., 235 F. Supp. 3d 1336, 2017 WL 237631, at *4 (S.D. Fla. 2017)* (allegations support claim of erroneous outcome where news media report criticized the university for its handling of sexual assault complaints made by female students against males; media report generated pressure from parents of female students and the public; and the university was cognizant of that criticism). Absent such allegations, the Court cannot find that Plaintiff has established a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *See Doe v. Cummins, 662 Fed Appx. at 451*. Because Plaintiff has failed to show how the alleged procedural deficiencies are connected to gender bias, Plaintiff fails to state a claim under Title IX based on erroneous outcome theory. Therefore, Defendants' Motion to Dismiss Plaintiff's Title IX claim is GRANTED.

### E. Qualified immunity

Qualified immunity shields **[*16]** "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. To determine whether a government official is entitled to qualified immunity, courts are to consider a two-part test: (1) whether "a constitutional right would have been violated on the facts alleged" and, if so, (2) whether the right was "clearly established." *Occupy Nashville v. Haslam, 769 F.3d 434, 442 (6th Cir. 2014)* (quoting *Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))*. "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)* (citing *Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009))*. If either prong is not satisfied, then qualified immunity shields the government officer from civil damages. *Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016)*.

Plaintiff maintains that as a result of this Court's issuance of the preliminary injunction, Plaintiff has not suffered any damages. Plaintiff explains that as a result, the question of qualified immunity is moot. "The defense of qualified immunity protects officials from individual liability for money damages but not from declaratory or injunctive relief." *Flagner v. Wilkinson, 241 F.3d 475, 483 (6th Cir. 2001)*. Plaintiff has represented to the Court that he is only pursuing declaratory and injunctive relief. (Doc. 31, PAGEID #472). **[*17]** The Court concludes that the Individual Defendants are not entitled to qualified immunity from Plaintiff's *§ 1983* claims for declaratory and injunctive relief. Therefore, to the extent Defendants' Motion to Dismiss is based upon their entitlement to qualified immunity, the Motion is DENIED.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

   1. Plaintiff's Motion for Expedited Discovery (Doc.4) is **DENIED as MOOT;**

2018 U.S. Dist. LEXIS 51833, *17

2. Defendants' Motion to Dismiss (Doc. 30) is **DENIED in PART and GRANTED in PART**.

**IT IS SO ORDERED**.

*/s/ Michael R. Barrett*

JUDGE MICHAEL R. BARRETT

---

**End of Document**